**480**

Larry J. OLSON, Appellant,

v.

Anthony J. PRINCIPI, Acting Secretary
of Veterans Affairs, Appellee.

No. 90–1321.

United States Court of Veterans Appeals.

Dec. 1, 1992.

Larry J. Olson, pro se.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and John D. McNamee, Washington, DC, were on the brief for appellee.

Before MANKIN, HOLDAWAY and STEINBERG, Associate Judges.

MANKIN, Associate Judge:

Appellant challenges the July 17, 1990, decision of the Board of Veterans' Appeals (Board or BVA) which denied entitlement to an increased rating for bilateral otitis media with defective hearing, currently rated as 10% disabling. On April 26, 1991, appellant filed a brief. On December 11, 1991, the Court denied appellant's motion to stay proceedings, strike the BVA decision, and remove his medical records from the control of the Department of Veterans Affairs (VA). On March 23, 1992, the Court issued an order denying appellant's motion to stay proceedings pending certification of an interlocutory appeal to the United States Court of Appeals for the Federal Circuit. Appellant's motion for reconsideration or modification of the Court's order was denied on April 14, 1992. On May 27, 1992, the Court denied appellant's writ of mandamus to the BVA or VA, again denied certification of an interlocutory appeal to the Federal Circuit, and denied appellant's request for substitution of judges. On June 19, 1992, the Court ordered the Secretary of Veterans Affairs (Secretary) to address the question of whether he had fully complied with his statutory duty to assist appellant "in developing the facts pertinent to the claim." 38 U.S.C. § 5107(a) (formerly § 3007(a)). The Secretary responded in a motion for summary affirmance, filed on July 8, 1992. Appellant filed a reply brief on July 17, 1992; on August 17, 1992, he filed a motion for remand. The Court has jurisdiction under 38 U.S.C. § 7252(a) (formerly § 4052(a)).

## I. FACTS

Mr. Olson had active service in the U.S. Army from February 18, 1958, to February 17, 1961. R. at 7. His entrance examination showed a history of running ears. R. at 8. The veteran was treated in February 1959, for persistent diminished hearing in both ears, and was diagnosed with "otitis media, suppurative, chronic." R. at 22. In May 1968, appellant filed an application for compensation or pension with the VA for hearing loss in both ears resulting from an infection suffered while in service. R. at 48. A VA medical examination report for disability found "otitis media, chronic, non-suppurative, bilateral, with deafness." R. at 58. Appellant was service-connected for defective hearing with a 10% evaluation, effective May 21, 1968. R. at 67.

On November 24, 1987, appellant attempted to reopen his claim for service connection for otitis media, and initiated a new claim for residuals of mastoidectomy, adhesive otitis, and desquamation. R. at 83. The VA scheduled appellant for an audiometric evaluation in Missoula, Montana. Appellant canceled the examination, stating that he would contact the VA in the spring. R. at 88. The veteran's claim was denied by rating decision on January 12, 1988, for failure to report for his scheduled examination. R. at 93. Appellant responded by letter to the VA Regional Office (RO) in Spokane, Washington, that he could not afford to travel from his home in Spokane to Missoula for an examination.

In May 1988, Mr. Olson contacted the RO to request a CAT scan. R. at 106. Apparently, the RO arranged for another physical examination, which did not include a CAT scan. Mr. Olson canceled the appointment because he was afraid that the doctors at the clinic would "do more harm than good." R. at 108. Appellant informed the VA that he would not agree to be examined unless he first received a CAT scan. R. at 113. In a rating decision dated June 16, 1988, appellant's claim was denied for the second time for "failure to cooperate." R. at 121.

The veteran requested another physical examination in July 1988. The VA authorized a CAT scan or X ray if medically indicated. R. at 130. Appellant failed to appear for the examination at the office of Dr. Habel because the doctor found no medical indication that a CAT scan was

warranted. Dr. Habel had previously treated appellant for his chronic ear condition in June 1986 and 1988. According to Dr. Habel, the "patient has a fixation on the need to have a CAT scan that borders on psychosis and that needs to be dealt with." R. at 131. Appellant's claim was again denied by rating decision on July 28, 1988. Appellant reinitiated his claim in October 1988. Appellant's claim was denied once more for failure to report for his VA examination. R. at 157.

Appellant renewed his claim for an increased rating in September 1989. R. at 159. Along with his claim for hearing loss, he requested evaluations for Meniere's Syndrome, labyrinthitis, and purulent meningitis. R. at 167. Appellant appeared for his examination on October 26, 1989, but he had an argument with the audiologist and would not submit to testing. R. at 185. Appellant failed to appear for another scheduled examination on December 5, 1989. In a letter to the VA, appellant stated that he would travel to Seattle for an examination "if the VA wants to provide train fare[,] food[,] and lodging in advance...." R. at 199. Appellant's claim was disallowed by a rating decision dated December 26, 1989. R. at 209. Appellant filed a Notice of Disagreement claiming 100% disability rating from September 1987, and 50% from 1968 to 1987. Appellant also claimed one million dollars compensation. R. at 212. In a letter to the VA, Mr. Olson stated, "There will be no hearings and no meetings[.] I will provide my medical information after you[,] the VA[,] provide medical examination." R. at 224. Appellant was scheduled for an examination in May 1990. His failure to appear prevented the VARO from determining whether his disability warranted a greater evaluation. As a result, appellant's 10% rating was confirmed. R. at 228. Appellant appealed to the Board, which affirmed the 10% rating in its decision of July 17, 1990, from which this appeal is taken.

## II. ANALYSIS

### A. Entitlement to Increased Rating

■ Where the veteran claims a disability is worse than when originally rated,

and the available evidence is too old to adequately evaluate the current state of the condition, the VA must provide a new examination. *Proscelle v. Derwinski*, 2 Vet.App. 629, 632 (1992). The most recent VA audiological examination on file for appellant was conducted in September 1968. The record shows that the VA made repeated attempts to provide Mr. Olson with an adequate medical evaluation. However, he failed to appear for scheduled examinations, even though required to do so under 38 C.F.R. § 3.326 (1991). As a result, the VA was forced to rely upon the available evidence to determine a disability rating. 38 C.F.R. § 3.655(b) (1991). Section 3.655(a) provides an exception in instances when a veteran fails to report for good cause. However, the examples of good cause cited in the regulation do not encompass appellant's claim of financial hardship.

The BVA noted in its decision that medical records of Dr. Habel from 1986 and 1988 do not indicate that the veteran had active otitis media after 1986. Under 38 C.F.R. § 4.87a (1991), Diagnostic Code (DC) 6200, chronic suppurative otitis media warrants a 10% evaluation during the continuance of the suppurative process. This evaluation is combined with the evaluation for any associated loss of hearing. The evidence available to the BVA, including Dr. Habel's evaluation and the September 1968 audiological examination, indicate that appellant's condition does not meet the requirements under the rating schedule for an evaluation higher than 10%.

### B. Duty to Assist

■ Section 5107(a) of title 38 of the United States Code and 38 C.F.R. § 3.103 (1991) provide that the Secretary shall assist the veteran in developing the facts pertinent to his claim. *See Godwin v. Derwinski*, 1 Vet.App. 419, 425 (1991); *Murphy v. Derwinski*, 1 Vet.App. 78, 81–82 (1990). In his pleadings, appellant accused the VA of failing to obtain medical records from his private physicians. R. at 110. The Court's order of June 19, 1992, required the Secretary to address whether he

fully complied with his statutory duty to assist appellant. "At a minimum, the VA ha[s] a duty to advise the veteran to submit the results of his private medical examination and to make them part of the record on appeal." *Littke v. Derwinski*, 1 Vet. App. 90, 92 (1990). The Court is satisfied that the VA complied with this minimum requirement when it advised appellant, "If you have any current private medical records ... please bring the records with you for our physician to review" (R. at 195) and "You have the right to request a personal hearing to present evidence or argument on any point of importance in your claim." R. at 210.

Full compliance with the statute also includes VA assistance in obtaining relevant records from private physicians when the claimant has provided concrete data as to time, place, and identity. *Wood v. Derwinski*, 1 Vet.App. 190, 193 (1991); *see also Culver v. Derwinski*, 3 Vet.App. 292 (1992); *Ivey v. Derwinski*, 2 Vet.App. 320 (1992). Appellant stated in a December 1989 letter to the VA that he had received a computer pressure test from Dr. Ernest E. Johnson, in Sacramento, California, sometime during 1989. R. at 201. He also alluded to a CAT scan taken in November 1988 or 1989 (R. at 202), and suggested that he had been examined by a number of private doctors. R. at 203, 213, 223–24. Appellant has provided sufficient information for the VA to locate the medical records of Dr. Johnson. However, the Court, in its order of March 23, 1992, found that this evidence, which was submitted by appellant in association with his motion for reconsideration, was not part of the record of proceedings before the BVA. With regard to the additional medical records, appellant did not provide sufficient information to oblige the VA to obtain these records.

## III. CONCLUSION

The record reflects that Mr. Olson has prevented full development of his claim by refusing to appear for VA disability examinations and by failing to provide medical information which may be pertinent to his claim. The Court is aware that Mr. Olson has informed the VA that he was unable to keep his scheduled appointments due to financial hardship associated with travelling to examination sites. However, the record reflects that on at least two occasions appellant arrived at the facility for his appointment, but refused to be examined. R. at 118, 185. In addition, appellant claims to have withheld information related to his disability, and has conditioned release of this data upon the VA's fulfillment of his demands. In *Wood*, we stated that, in order to trigger the duty to assist, appellant must do more than passively wait for assistance when he has information essential to his claim. 1 Vet.App. at 193. "The duty to assist is not always a one-way street" (*Id.*); nor is it a blind alley. If Mr. Olson attempts to raise a future claim with new and material evidence, he must be prepared to meet the requirements of the Court's ruling in *Wood* and of 38 C.F.R. § 3.326, by cooperating with the VA's efforts to provide an adequate medical examination and submitting to the Secretary all medical evidence supporting his claim.

After consideration of appellant's brief, the Secretary's motion for summary affirmance, and a review of the record, it is the holding of the Court that appellant has not demonstrated that the Board committed either legal or factual error which would warrant reversal or remand. *Gilbert v. Derwinski*, 1 Vet.App. 49 (1990); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Danville Plywood Corp. v. United States*, 899 F.2d 3 (Fed.Cir.1990). The Court is also satisfied that the BVA decision provides sufficient "reasons or bases" to support its findings and conclusions on all material issues of fact and law presented in the record. 38 U.S.C. § 7104(d)(1) (formerly § 4004(d)(1)). *See Gilbert*, 1 Vet. App. 49. Accordingly, the decision of the BVA is AFFIRMED.