Citation Nr: 1508807 
Decision Date: 02/27/15 Archive Date: 03/11/15

DOCKET NO. 08-36 588 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Sioux Falls, South Dakota


THE ISSUES

1. Entitlement to an initial rating in excess of 20 percent for degenerative joint disease, status post laminectomy, of the lumbosacral spine.

2. Entitlement to an initial rating in excess of 20 percent for rotator cuff tendonitis of the left shoulder.


REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States


ATTORNEY FOR THE BOARD

T. Carter, Associate Counsel



INTRODUCTION

The Veteran served on active duty from July 1986 to July 2006.

This case comes before the Board of Veterans' Appeals (Board) on appeal from a March 2007 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in San Diego, California. During the course of the appeal, the claims file was transferred to the RO in Sioux Falls, South Dakota.

In an October 2013 decision, the Board remanded the issues on appeal for additional development and adjudicative action. In an October 2014 rating decision, the RO increased the 10 percent disability rating for degenerative joint disease, status post laminectomy, of the lumbosacral spine, to 20 percent disabling for the entire initial rating period on appeal. Because the 20 percent disability rating is not the maximum rating available, the issue remains on appeal. See AB v. Brown, 6 Vet. App. 35 (1993). The case has been returned to the Board for further appellate review.

This appeal was processed using the Virtual Benefits Management System (VBMS). The Virtual VA electronic claims file also contains additional documents that may be pertinent to the present appeal, including duplicate VA examination reports and VA treatment records. Accordingly, any future consideration of the case should take into consideration the existence of these electronic records.


FINDINGS OF FACT

1. Degenerative joint disease, status post laminectomy, of the lumbosacral spine, has not been manifested by limited forward flexion to 30 degrees or less, ankylosis, or any additional associated neurological abnormalities besides radiculopathy of the bilateral lower extremities.

2. Rotator cuff tendonitis of the left shoulder has not been manifested by limitation of motion to 25 degrees from the side, ankylosis, or impairment of the humerus. 

CONCLUSIONS OF LAW

1. The criteria for an initial rating in excess of 20 percent for degenerative joint disease, status post laminectomy, of the lumbosacral spine, have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.3, 4.7, 4.10, 4.21, 4.27, 4.71a, Diagnostic Codes (DCs) 5010-5242 (2014).

2. The criteria for an initial rating in excess of 20 percent for rotator cuff tendonitis of the left shoulder have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.3, 4.7, 4.10, 4.21, 4.71a, DC 5201 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). In this case, required notice was provided by a letter in August 2006. Neither the Veteran, nor her representative, has either alleged, or demonstrated, any prejudice with regard to the content or timing of VA's notice or other development. See Shinseki v. Sanders, 129 U.S. 1696 (2009). Thus, adjudication of her claims at this time is warranted. 

As to VA's duty to assist, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). As the record currently stands, statements from the Veteran and her representative, VA treatment records, private treatment records, and March 2009 Decision Review Officer (DRO) hearing transcript are associated with the record.

As described, VA has satisfied its duties to notify and assist, and additional development efforts would serve no useful purpose at any point during the appeal periods. See Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). Because VA's duties to notify and assist have been met, there is no prejudice to the Veteran in adjudicating these identified issues on appeal. 

Pertinent Laws and Regulations for Initial Rating Claims

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When reasonable doubt arises as to the degree of disability, such doubt will be resolved in the Veteran's favor. 38 C.F.R. § 4.3. 

When entitlement to compensation has been established and a higher initial evaluation is at issue, the level of disability at the time entitlement arose is of primary concern. Consideration must also be given to a longitudinal picture of the Veteran's disability to determine if the assignment of separate ratings for separate periods of time, a practice known as "staged" ratings, is warranted. See Fenderson v. West, 12 Vet. App. 119 (1999). 

Pertinent regulations do not require that all cases show all findings specified by the Rating Schedule, but that findings sufficiently characteristic to identify the disease and the resulting disability and above all, coordination of rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21. Therefore, the Board has considered the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disabilities in reaching its decision. Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). 

When evaluating musculoskeletal disabilities, VA may, in addition to applying schedular criteria, consider granting a higher rating in cases in which the claimant experiences additional functional loss due to pain, weakness, excess fatigability, or incoordination, to include with repeated use or during flare-ups, and those factors are not contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45; DeLuca v. Brown, 8 Vet. App. 202, 204-07 (1995). The provisions of 38 C.F.R. § 4.40 and 38 C.F.R. § 4.45 are to be considered in conjunction with the diagnostic codes predicated on limitation of motion. See Johnson v. Brown, 9 Vet. App. 7 (1996).


Back Disability

The Veteran seeks an initial rating in excess of 20 percent for degenerative joint disease, status post laminectomy, of the lumbosacral spine (hereafter "back disability"). This disability is currently rated as 20 percent for the entire initial rating period on appeal under 38 C.F.R. §§ 4.27 (explaining hyphenated diagnostic codes), 4.71a, DCs 5010-5242.

DC 5010 provides that arthritis, due to trauma and substantiated by x-ray findings, is rated as degenerative arthritis. See 38 C.F.R. § 4.71a. 

DC 5242 provides for degenerative arthritis of the spine (see also DC 5003). DC 5003 provides that degenerative arthritis, established by x-ray findings, is rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. 38 C.F.R. § 4.71a. 

DCs 5235-5242 are rated under the General Rating Formula for Diseases and Injuries of the Spine (General Formula). Under the General Formula, the next higher: 
* 40 percent rating is assigned for the thoracolumbar spine when
o Forward flexion is 30 degrees or less, or
o There is favorable ankylosis of the entire thoracolumbar spine.
* 50 percent rating is assigned for unfavorable ankylosis of the entire thoracolumbar spine.
* 100 percent rating is assigned for unfavorable ankylosis of the entire spine.

For VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees. 38 C.F.R. § 4.71a, DC 5235-5243, Note (2). 

For VA compensation purposes, unfavorable ankylosis is a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. See 38 C.F.R. § 4.71a, Note (5). Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. Id.

Ankylosis is also defined as "immobility and consolidation of a joint due to disease, injury, surgical procedure." Lewis v. Derwinski, 3 Vet. App. 259 (1992) (citing Saunders Encyclopedia and Dictionary of Medicine, Nursing, and Allied Health at 68 (4th ed. 1987)); Dinsay v. Brown, 9 Vet. App. 79, 81 (1996) (ankylosis is "stiffening or fixation of a joint as the result of a disease process, with fibrous or bony union across the joint," citing Stedman's Medical Dictionary 87 (25th ed. 1990)).

The criteria for an initial evaluation in excess of 20 percent have not been met at any time during the initial rating period on appeal prior to July 6, 2009. The evidence does not demonstrate that the Veteran has limited forward flexion to 30 degrees or less or ankylosis to warrant the next higher 40 percent rating.
After a review of all the evidence in this Veteran's case, the Board finds that the Veteran's service-connected back disability is manifested by limited range of motion, painful motion, tenderness on palpation, limited ability to stand, sit, lay down, or walk for very long periods, and radiculopathy of the bilateral lower extremities. 

VA and private treatment records show ongoing complaints of pain and tenderness. Such records specifically include a June 2007 VA treatment record that noted the Veteran's thoracolumbar spine demonstrated tenderness on palpation and limited range of motion. In addition, a January 2009 private treatment record noted "range of motion of the lumbar spine is markedly in forward flexion." Nevertheless, such findings were noted without specification in degrees. An October 2007 letter from Dr. Bryant notes the Veteran's chronic back pain, worse with standing or walking. Moreover, at the March 2009 DRO hearing, the Veteran reported she cannot stand, sit, lay down, or walk very long without pain and stopping to rest because of her back disability.

A separate evaluation may be warranted for any associated objective neurological abnormalities, including, but not limited to, bowel or bladder impairment, under an appropriate diagnostic code. See 38 C.F.R. § 4.71a, DCs 5235-5243, Note (1). Service connection has already been granted for radiculopathy of the bilateral lower extremities, each rated at 20 percent disabling, effective August 1, 2006. With regard to any other associated neurological abnormalities associated with the service-connected back disability, the record is silent for any additional findings. An August 2007 VA treatment record shows the Veteran denied symptoms of bowel and bladder dysfunction within the context of chronic low back pain. In January 2009, she complained of pain with bowel and bladder function due to her back pain; however, there was no rendered diagnosis attributable to such reported symptomatology. 

The evidence of record indicates the service-connected back disability more closely approximates manifestations of limited range of motion, painful motion, tenderness on palpation, limited ability to stand, sit, lay down, or walk for very long periods, and radiculopathy of the bilateral lower extremities. Moreover, the evidence of record shows that physical findings of the Veteran's back during the appeal period do not demonstrate limited forward flexion to 30 degrees or less, ankylosis or any additional associated neurological abnormalities.

The Board is fully aware that the appellant was scheduled for a more recent VA examination. However, she declined to participate in the evaluation process. That decision on her part makes further discussion of the functional impact of the disability impossible. DeLuca v. Brown, 8 Vet. App. 202 (1995). The duty to assist is not always a one-way street; nor is it a blind alley. Olson v. Principi, 3 Vet.App. 480, 483 (1992). 

Left Shoulder

The Veteran seeks an initial rating in excess of 20 percent for rotator cuff tendonitis of the left shoulder (hereafter "left shoulder disability"). This disability is currently rated as 20 percent for the entire initial rating period on appeal under 38 C.F.R. § 4.71a, DC 5201.

When rating limitation of motion of the arm under DC 5201, a distinction is made between major (dominant) and minor extremities. In this case, review of the record reveals the Veteran reported he is right-hand dominant, hence the left arm and shoulder represents the minor extremity.

The next higher 30 percent rating for the minor extremity (the maximum available) is warranted where the evidence shows motion of the arm limited to 25 degrees from side. For VA compensation purposes, normal range of motion of the shoulder is flexion (forward elevation) from 0 degrees to 180 degrees. See 38 C.F.R. § 4.71, Plate I.

The criteria for an initial evaluation in excess of 20 percent have not been met at any time during the initial rating period on appeal prior to July 6, 2009. The evidence does not demonstrate that the Veteran has limited motion to 25 degrees from the side to warrant the next higher 30 percent rating. After a review of all the evidence in this Veteran's case, the Board finds that the Veteran's left shoulder disability is manifested by limited forward flexion to, at worst, 90 degrees, painful motion, weakness, crunching, and tenderness.

Private treatment records show the Veteran's going complaints of pain, as specifically noted in September 2007. Review of the record also includes multiple complaints and treatment for the left shoulder. 

Upon evaluation in August 2007, she exhibited tenderness to palpation over supraspinatus muscle, as well as, painful motion on active abduction and active forward flexion with no decrease in range of motion findings in these directions. In 
October 2007, the Veteran's symptoms included tenderness to palpation over bony and soft tissue, and she demonstrated full active and passive range of motion and normal muscle strength. In November 2007, the Veteran demonstrated active forward elevation to 95 degrees, active abduction to 95 degrees, and no change to active range of motion after repetitive movement. On evaluation in December 2007, the Veteran's left shoulder reportedly did not catch during movement and there was no left shoulder weakness. The treating physician did note findings of tenderness on palpation, painful motion, painful active abduction and active forward elevation, and normal passive and active abduction. In October 2008, the Veteran also demonstrated abduction of the left shoulder beyond 90 degrees with pain.

At the March 2009 DRO hearing, the Veteran reported she has been told that her scapula is not properly attached to muscle, hence it rotates the wrong way when she makes certain movements above her head and forward. She experiences crunching after repetitive movements, weakness, and pain as a result. The Veteran also reported that her snapping scapula and fractured ribs (for which is currently service connected, at 10 percent disabling effective August 1, 2006, and not currently on appeal) cause her not to be able to perform daily functions. Such limitations include carrying weight in front of and above her body. 

The evidence of record indicates the service-connected left shoulder disability more closely approximates manifestations of limited forward flexion to, at worst, 90 degrees, painful motion, weakness, crunching, and tenderness. Moreover, the evidence of record shows that physical findings of the Veteran's left shoulder during the appeal period do not demonstrate limited motion to 25 degrees from the side.

The Board also finds review of the record reveals the Veteran exhibited movement of the left shoulder throughout the appeal period as documented in VA and private treatment records, as discussed above. Therefore, DCs 5200 (ankylosis) and 5202 (impairment of the humerus) are not for application. See 38 C.F.R. § 4.71a. There are no other DCs that provide a basis to assign a rating in excess of 20 percent.

The Board is fully aware that the appellant was scheduled for a more recent VA examination. However, she declined to participate in the evaluation process. That decision on her part makes further discussion of the functional impact of the disability impossible. DeLuca v. Brown, 8 Vet. App. 202 (1995). The duty to assist is not always a one-way street; nor is it a blind alley. Olson v. Principi, 3 Vet.App. 480, 483 (1992). 

Additional Considerations

The Board has considered all other potentially applicable provisions of 38 C.F.R. Parts 3 and 4, as required by Schafrath, 1 Vet. App. at 594 for the service-connected disabilities discussed above. However, after careful review of the available diagnostic codes, and consideration of the lay and medical evidence of record, the Board finds there are no other diagnostic codes that provide a basis to assign higher ratings for these claims on appeal.

The Board has considered the Veteran's reported history of symptomatology for her service-connected back and left shoulder disabilities. It is acknowledged that she is competent to report such symptoms and observations because this requires only personal knowledge as it comes through her senses. Layno v. Brown, 6 Vet. App. 465, 470 (1994). However, the more probative evidence concerning the nature and extent of the Veteran's disabilities has been provided in the medical evidence of record. As such, the Board finds these records to be more probative than the Veteran's subjective complaints and worsened symptomatology. See Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991).

The Board has also considered a higher rating in this case based on the presence of additional functional loss not contemplated in the current 20 percent evaluations for back and left shoulder disabilities based on the provisions of 38 C.F.R. §§ 4.40, 4.45, 4.59, and the holdings in DeLuca. As discussed above, the Board finds that the functional equivalent of limited forward flexion to 30 degrees or less or favorable ankylosis of the lumbosacral spine is not shown, even when considering the Veteran's ongoing complaints of painful motion, tenderness on palpation, and limitations on standing, sitting, laying down, and walking. In addition, the Board finds that the functional equivalent of limited motion of the left arm to 20 degrees form the side is not shown, even when considering the Veteran's ongoing complaints of pain, weakness, crunching, tenderness, and painful motion. The Veteran's complaints do not, when viewed in conjunction with the medical evidence, tend to establish weakened movement, excess fatigability, or incoordination to the degree that would warrant a higher rating for these service-connected disabilities.

Lastly, an extra-schedular evaluation may be provided for exceptional cases. 38 C.F.R. § 3.321. The threshold factor (first step) for extra-schedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Thun v. Peake, 22 Vet. App. 111, 115 (2008), aff'd sub nom. Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). 

Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral under the next step is required.

In the second step, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. § 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). If such an exhibition is determined, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for Completion of the third step - a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extra-schedular rating. Id. 

The Board finds that the relevant rating schedule for the service-connected back disability (38 C.F.R. § 4.71a, DC 5010-5242) and left shoulder disability (38 C.F.R. § 4.71a, DC 5201) do not adequately contemplate and describe the symptoms and functional impairment caused by these disabilities prior to July 6, 2009. Specifically, such symptoms and impairment beyond what is provided for higher ratings in the schedular rating criteria include difficulty sleeping due to back and left shoulder pain, as noted pursuant to VA treatment in July 2007 and private treatment in January 2009 as well as at the March 2009 DRO hearing. Pursuant to an October 2008 VA treatment session, the Veteran also reported difficulty getting dressed due to her back disability. Nevertheless, the Board finds the Veteran's exceptional disability picture does not exhibit other related factors such as those provided by 38 C.F.R. § 3.321(b)(1) as "governing norms," to include marked interference with employment or frequent periods of hospitalization due to the service-connected back and left shoulder disabilities.

As a result, referral for extra-schedular consideration for these service-connected disabilities is not required. Thus, even in regard to the collective and combined effect of all of the Veteran's service-connected disabilities, no referral for extra-schedular consideration is required under the circumstances of this case prior to July 6, 2009. See Johnson v. McDonald, 2013-7104, 2014 WL 3562218 (Fed. Cir. Aug. 6, 2014).

The Board has also considered whether an inferred claim for a total disability rating based on individual unemployability (TDIU) under Rice v. Shinseki, 22 Vet. App. 447 (2009) has been raised prior to July 6, 2009. Review of the record does not indicate that the Veteran has been unable to secure or follow a substantially gainful occupation as a result of her service-connected back and left shoulder disabilities on appeal. In fact, VA and private treatment records specifically note her employed status with computer Information Technology, as noted in July 2008, January 2009, and August 2009. Thus, the Board finds that Rice is inapplicable. 


ORDER

An initial rating in excess of 20 percent for degenerative joint disease, status post laminectomy, of the lumbosacral spine, is denied.

An initial rating in excess of 20 percent for rotator cuff tendonitis of the left shoulder is denied.



____________________________________________
H. N. SCHWARTZ
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs