Citation Nr: 1522728 
Decision Date: 05/29/15 Archive Date: 06/11/15

DOCKET NO. 13-15 065 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to a rating in excess of 10 percent for degenerative arthritis of the lumbar spine.

2. Entitlement to a rating in excess of 10 percent for degenerative arthritis of the cervical spine.

3. Entitlement to a rating in excess of 10 percent for degenerative joint disease status post right knee internal derangement and arthroscopic surgery.

4. Entitlement to a compensable evaluation for a left knee scar.

5. Entitlement to a compensable rating for toxic keratopathy of both eyes.

6. Entitlement to service connection for degenerative arthritis of the right ankle as secondary to a service-connected disability.

7. Entitlement to service connection for degenerative arthritis of the left ankle as secondary to a service-connected disability.

8. Entitlement to service connection for degenerative joint disease of the right foot as secondary to a service-connected disability.

9. Entitlement to service connection for degenerative joint disease of the left foot as secondary to a service-connected disability.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

James A. DeFrank, Counsel


INTRODUCTION

The Veteran had active service in the United States Army from May 1981 to May 2001.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a September 2009 rating decision of the Department of Veterans Affairs (VA), Regional Office (RO) in Winston-Salem, North Carolina.

In June 2014, the Veteran provided testimony before the undersigned Veterans Law Judge at a videoconference hearing held at the RO. A transcript of the hearing has been associated with the claims folders.

The Board notes that, in addition to the paper claims file, there is a Virtual VA electronic claims file associated with the Veteran's claim. A review of the documents in the electronic file reveals additional evidence that will be considered by the Board in this appeal.

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.


REMAND

Following a review of the Veteran's claims file, the Board finds that further development is required prior to the adjudication of the claims.

Regarding the Veteran's claims for increased ratings for her service-connected lumbar spine, cervical spine, right knee and left knee scar disabilities, the Veteran's last examination for these disabilities took place in June 2010.

However, during his June 2014 hearing, the Veteran testified that her disabilities had all worsened. The Veteran also testified that she had been receiving treatment for these disabilities at the VA Medical Center. Given that the Veteran indicated that her service-connected symptoms had worsened and he appears to be receiving continued treatment for these disabilities, the Board is of the opinion that new VA examinations would be probative. 

Although a new VA examination is not warranted based merely upon the passage of time [see Palczewski v. Nicholson, 21 Vet. App. 174 (2007)], the Court has held that where a veteran claims that a disability is worse than when originally rated, and the available evidence is too old to adequately evaluate the current state of the condition, the VA must provide a new examination. See Olsen v. Principi, 3 Vet. App. 480, 482 (1992), citing Proscelle v. Derwinski, 2 Vet. App. 629, 632 (1992). 

Therefore, to ensure that the record reflects the current severity of the Veteran's service-connected degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, degenerative joint disease status post right knee internal derangement and arthroscopic surgery, and a left knee scar, contemporaneous examinations are warranted, with findings responsive to the applicable rating criteria. See Green v. Derwinski, 1 Vet. App. 121, 124 (1991) (VA has a duty to provide the Veteran with a thorough and contemporaneous medical examination, one which takes into account the records of prior medical treatment, so that the evaluation of the claimed disability will be a fully informed one) and Caffrey v. Brown, 6 Vet. App. 377, 381 (1994) (an examination too remote for rating purposes cannot be considered contemporaneous").

Regarding the Veteran's claim for a compensable evaluation for toxic keratopathy of both eyes, the Veteran last underwent a VA examination in May 2010. At his June 2014 hearing, she testified that she underwent laser eye surgery in 2011 in Wilmington by a private physician. The Veteran also noted that the VA examiner in May 2010 had changed her eye diagnosis from toxic keratopathy of both eyes to open angle glaucoma. 

As there is a new diagnosis and evidence of surgery subsequent to the most recent VA examination in May 2010, the Board finds that to ensure that the record reflects the current severity of the Veteran's service-connected disability of the bilateral eyes, a contemporaneous examination is warranted, with findings responsive to the applicable rating criteria. See Green; supra.

Regarding the Veteran's service connection claims, the Board notes that during the Veteran's November 2014 videoconference hearing, it was noted that the Veteran had been receiving continuous medical treatment through the VA. 

However, aside from an April 2013 MRI of the right knee and right ankle, the most recent VA treatment records associated with the file are from 2010. 

Therefore, it appears that additional records pertaining to the Veteran's diagnosis and etiology of his claimed left ankle, right ankle, left foot and right foot disabilities may exist. See Dunn v. West, 11 Vet. App. 462 (1998); Bell v. Derwinski, 2 Vet. App. 611 (1992) (VA treatment records are in constructive possession of the Secretary, and must be considered if the material could be determinative of the claim).

In a July 2014 correspondence, the Veteran also indicated that she had received additional treatment for his feet and that she had requested that the Duke University Medical Center provide her with all of their records from 2012. Additionally, the Veteran also noted that a private physician provided her information regarding the swelling of his feet. To date, no records from Duke Medical Center or the Veteran's private physician have been associated with the claims file.

Under these circumstances, the Board also finds that VA has a duty to make a further attempt to obtain the Veteran's private treatment records. Massey v. Brown, 7 Vet. App. 204 (1994).

Accordingly, the case is REMANDED for the following action:

1. The Veteran should be requested to provide the names, addresses and approximate dates of treatment of all medical care providers, VA and non-VA, who have treated him for the disabilities on appeal. After the Veteran has signed the appropriate releases, those records should be obtained and associated with the claims folder. 

Appropriate efforts must be made to obtain all available VA treatment records. All attempts to procure records should be documented in the file. If the AMC/RO cannot obtain records identified by the Veteran, a notation to that effect should be inserted in the file. The Veteran is to be notified of unsuccessful efforts in this regard, in order to allow him the opportunity to obtain and submit those records for VA review.

2. Obtain from the Fayetteville, North Carolina VA Medical Center (VAMC) all outstanding medical records all outstanding medical records from 2010 to the present. Follow the procedures set forth in 38 C.F.R. § 3.159(c) as regards requesting records from Federal facilities. All records and/or responses received should be associated with the claims file.

3. All necessary steps to obtain any records of treatment pertinent to the claims on appeal from the Duke University Medical Center and a private physician in Wilmington who conducted the Veteran's laser eye surgery in 2011 should be taken. Records of any other pertinent treatment should be obtained. The Veteran's assistance in identifying and obtaining the records should be solicited as needed. The attempts to procure records should be documented in the file. If records cannot be obtained, a notation to that effect should be inserted in the file. The Veteran is to be notified of unsuccessful efforts in this regard, in order to allow the Veteran the opportunity to obtain and submit those records for VA review.

4. After the development requested above has been completed to the extent possible, the Veteran should also be scheduled for a VA examination before an appropriate physician to determine the current level of severity of her service-connected lumbar spine and cervical spine disabilities. 

The Veteran's claims file and a copy of this remand must be provided to the examiner for review in conjunction with this examination, and the examination report should reflect review of these items. All necessary tests and studies should be performed, and the examiner should describe in detail all symptomatology associated with the Veteran's lumbar spine and cervical spine disabilities. 

The examiner should also render specific findings as to whether, during the examination, there is objective evidence of pain on motion, weakness, excess fatigability, and/or incoordination associated with the lumbar or cervical spine. If pain on motion is observed, the examiner should indicate the point at which pain begins. In addition, the examiner should indicate whether, and to what extent, the Veteran likely experiences functional loss due to pain or any of the other symptoms noted above during flare-ups and/or with repeated use. 

The examiner should also indicate whether the Veteran suffers from intervertebral disc syndrome, and if so, whether this condition has resulted in incapacitating episodes. 

The examiner should also indicate whether the Veteran has any neurological complications stemming from her low back or cervical disabilities. If so, the examiner should identify the affected nerve group and state whether there is mild, moderate, moderately severe, or severe incomplete paralysis. 

The examiner should also provide an opinion concerning the impact of the Veteran's service-connected lumbar spine and cervical spine disabilities on her ability to work. 

5. After the development requested above has been completed to the extent possible, the Veteran should also be scheduled for a VA examination before an appropriate physician to determine the current level of severity of her service-connected right knee disability.

The examiner should describe in detail any symptomatology related to the Veteran's right knee disability. In particular, the examiner should specifically indicate if there is recurrent subluxation or lateral instability of the right knee.

The examiner should also conduct range of motion studies of the right knee, expressed in degrees. The examiner should render specific findings as to whether, during the examination, there is objective evidence of pain on motion, weakness, excess fatigability, and/or incoordination associated with the right knee. If pain on motion is observed, the examiner should indicate the point at which pain begins. The examiner should also indicate whether, and to what extent, the Veteran experiences likely functional loss of the right knee due to pain and/or any of the other symptoms noted above during flare- ups and/or with repeated use; to the extent possible, the examiner should express any such additional functional loss in terms of additional degrees of limited motion.

The examiner should provide an opinion regarding the impact of the disability on the Veteran's ability to work. 

All necessary testing should be completed and any opinions rendered should be accompanied by rationale.

6. After the development requested above has been completed to the extent possible, the Veteran should also be scheduled for a VA examination before an appropriate physician to determine the current level of severity of her service-connected left knee scar disability.

In the examination report, the examiner must specifically describe the size, location, and appearance of the service-connected left knee scar, to include commenting on any symptomatology or functional impairment associated with the scarring.

The examiner should provide an opinion regarding the impact of the disability on the Veteran's ability to work. 

All necessary testing should be completed and any opinions rendered should be accompanied by rationale.

7. After the development requested above has been completed to the extent possible, the Veteran should also be scheduled for a VA ophthalmology examination before an appropriate physician to determine the current level of severity of her service-connected eye disability.

All appropriate tests and studies (to include vision field testing) should be accomplished (with all results made available to the requesting physician prior to the completion of his or her report) and all clinical findings should be reported in detail.

The examiner should interpret all graphical representations of visual field testing, and the results of such testing should be reported in terms of the applicable rating criteria. In this regard, for VA rating purposes, the normal visual field extent at the 8 principal meridians, in degrees, is: temporally, 85; down temporally, 85; down, 65; down nasally, 50; nasally, 60; up nasally, 55; up, 45; up temporally, 55. The total visual field is 500 degrees. The examiner must report the extent of the remaining visual field in each of the eight 45 degree principal meridians.

Also, with respect to the recently diagnosed eye condition of open angle glaucoma, the examiner should indicate whether the condition represents a manifestation or progression of the service-connected toxic keratopathy of both eyes or whether it is a separate disability. 

The examiner should provide an opinion regarding the impact of the disability on the Veteran's ability to work. 

All necessary testing should be completed and any opinions rendered should be accompanied by rationale.

8. Thereafter, readjudicate the issues on appeal. If any benefit sought on appeal remains denied, the Veteran and her representative should be provided with a Supplemental Statement of the Case and be afforded a reasonable opportunity to respond. The case should then be returned to the Board for further appellate review, if otherwise in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
MICHAEL LANE
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2014).