﻿Citation Nr: AXXXXXXXX
Decision Date: 10/31/19 Archive Date: 10/31/19

DOCKET NO. 190512-8779
DATE: October 31, 2019

ORDER

A rating in excess of 30 percent for multiple sclerosis is denied.

FINDINGS OF FACT

Without good cause, the Veteran failed to report for VA examinations scheduled for the purpose of determining the current nature and severity of her service-connected multiple sclerosis.

CONCLUSIONS OF LAW

The veteran’s failure to report for VA examinations deemed necessary to determine the current severity of her service-connected multiple sclerosis requires that her claim for a disability evaluation greater than 30 percent for multiple sclerosis must be denied as a matter of law. 38 C.F.R. § 3.655.

REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veteran served on active duty from September 1997 to September 2001. 

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.

An October 2018 rating decision continued a 30 percent rating for the Veteran’s service-connected multiple sclerosis with optic neuritis. By a filing of December 2018, the Veteran elected RAMP’s supplemental claim option. Following the denial by a rating decision of March 2019, the Veteran elected RAMP’s direct review option in May 2019. As of October 1, 2018, the Board is adjudicating RAMP appeals based on a notice of disagreement filed with respect to a rating decision that denied a RAMP supplemental claim, as is the case here. 

1. A rating in excess of 30 percent for multiple sclerosis with optic neuritis

The Veteran contends that her service-connected multiple sclerosis is more disabling than currently evaluated.

Disability evaluations are determined by the application of VA’s Schedule for Rating Disabilities, which assigns ratings based on the average impairment of earning capacity resulting from service-connected disability. 38 U.S.C. § 1155; 38 C.F.R. Part 4. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the veteran’s condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991).

Turning to the law governing the rating of multiple sclerosis, the disease is rated pursuant to 38 C.F.R. § 4.124a, Diagnostic Code 8018. The Diagnostic Code provides that the minimum rating for multiple sclerosis is 30 percent. A note following the Diagnostic Code further explains how the ratings are to be applied:

It is required for the minimum ratings for residuals under diagnostic codes 8000-8025, that there be ascertainable residuals. Determinations as to the presence of residuals not capable of objective verification, i.e., headaches, dizziness, fatigability, must be approached on the basis of the diagnosis rendered; subjective residuals will be accepted when consistent with the disease and not more likely attributable to other disease or no disease. It is of exceptional importance that when ratings in excess of the prescribed minimum ratings are assigned, the diagnostic codes utilized as bases of evaluation be cited, in addition to the codes identifying the diagnoses.

In accordance with the plain language of the Diagnostic Code, in order to receive the 30 percent minimum rating there must be at least one residual of multiple sclerosis. If there is at least one residual, then the Diagnostic Code acts as a ratings floor-regardless of the severity of the residuals, the mere fact that they are present entitles a veteran to at least a 30 percent rating. If the residuals, as evaluated pursuant to their own respective Diagnostic Codes or as rated by analogy, warrant a rating in excess of 30 percent, then Diagnostic Code 8018 is read in conjunction with 38 C.F.R. §§ 4.14 and 4.25(b), and the veteran is assigned separate ratings that do not overlap in symptoms.

The Veteran was scheduled for several VA examinations in October 2018. She was advised of the adverse consequences of failing to appear for a VA examination without good cause by correspondence from the RO dated in October 2018, and asked to notify the RO when she was ready to report for an examination. She also was advised of the adverse consequences of failing to appear for a VA examination without good cause by the March 2019 rating decision. 

When a claimant fails to report for an examination scheduled in conjunction with a claim for increase without good cause, the claim shall be denied. 38 C.F.R. § 3.655(b). Examples of good cause include, but are not limited to, the illness or hospitalization of the claimant or death of an immediate family member. In this case, neither the Veteran nor her service representative has explained why she failed to report without good cause for her VA examinations. She has also not indicated her willingness to report for a VA examination.

There is not sufficient medical evidence of record to adjudicate the Veteran’s claim for a disability evaluation greater than 30 percent for multiple sclerosis. Current examination findings are necessary to assess her disability as it is unclear what residuals the Veteran suffers from and the current severity of any residuals. In this regard, the Board notes that the Veteran submitted a private multiple sclerosis disability benefits questionnaire (DBQ) completed by Dr. N.R. in September 2018. The DBQ indicated the Veteran suffered from muscles weakness; however, the muscle weakness was mild and did not warrant a separate compensable rating. The DBQ also indicated that the Veteran suffered from persistent daytime hypersomnolence; however, the Board notes the Veteran has also been diagnosed with obstructive sleep apnea with the main symptom being persistent daytime hypersomnolence which was previously found not to be service-connected. The DBQ indicated the Veteran suffered from a voiding dysfunction causing urinary frequency resulting in a daytime voiding interval between one and two hours and nighttime awakening to void two times. This would result in a 20 percent disability rating, but this is not greater than the already awarded minimum rating of 30 percent for multiple sclerosis. Visual disturbances of diplopia, blurring of vision, unilateral decreased visual acuity, unilateral visual scotoma, and optic neuritis were noted; however, an eye conditions DBQ was not completed so it is unclear to what degree these conditions impair the Veteran. Similarly, memory loss and feelings of sadness or depression were reported, but a mental disorders DBQ was not completed in order to evaluate the current severity of the condition.

A review of the Veteran’s December 2018 VA treatment records show that the Veteran complained of numbness to thumb and first finger on her left hand. During the multiple sclerosis review of systems she reported general memory impairment, denied depression, noted occasional fatigue with obstructed sleep apnea without use of continuous positive airway pressure (CPAP) machine to date, and worsening symptoms of heat intolerance. She denied all other symptoms, including weakness, diplopia, and bladder problems. Muscle strength was 5/5 bilaterally and reflexes were 2/4 bilaterally. Her medical provider noted that the examination was significant for delayed recall with cues but was otherwise normal. 

Although mail related to the scheduling of the VA examinations are not of record, as the Veteran does not contend that she did not receive notice, and as it was the Veteran who cancelled her October 2018 examination, the Board finds that the Veteran received proper notice. See Ashley v. Derwinski, 2 Vet. App. 62 (1992); Mindenhall v. Brown, 7 Vet. App. 271 (1994); see also Miley v. Principi, 366 F.3d 1343, 1347 (Fed. Cir. 2004).

The Board also finds that no further development needs to be taken to schedule the Veteran for VA examinations as the Veteran failed to appear at the VA examinations and did not submit any reason or good cause for not appearing. See Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). The Veteran has an obligation to assist in the adjudication of her claim. The Veteran must be prepared to meet her obligations by cooperating with VA efforts to provide an adequate medical examination and submitting to the Secretary all medical evidence supporting her claim. Olson v. Principi, 3 Vet. App. 480 (1992). Individuals for whom examinations have been authorized and scheduled are required to report for same. 38 C.F.R. §§ 3.326, 3.327. Further, she has also not indicated her willingness to report for a VA examination.

Accordingly, the Board finds that the Veteran failed to report, without good cause, for her VA examinations scheduled in connection with her claim for a disability evaluation greater than 30 percent for multiple sclerosis. Consistent with 38 C.F.R. § 3.655(b), the claim must be denied. Because the law is dispositive in this case, the claim must be denied on the basis of lack of entitlement under the law. See Sabonis v. Brown, 6 Vet. App. 426 (1994); see also VAOPGCPREC 5-04.

 

 

MARJORIE A. AUER

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Department of Veterans Affairs

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.