Citation Nr: 1607946 
Decision Date: 02/29/16 Archive Date: 03/04/16

DOCKET NO. 10-01 288 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Milwaukee, Wisconsin


THE ISSUES

1. Entitlement to a higher (compensable) initial rating for a right inguinal hernia, status post herniorrhaphy with scar, from March 13, 2007. 
 
2. Entitlement to a higher (compensable) initial rating for bilateral hearing loss from February 14, 2007.


REPRESENTATION

The Veteran is represented by: Wisconsin Department of Veterans Affairs


WITNESS AT HEARING ON APPEAL

The Veteran




ATTORNEY FOR THE BOARD

Amanda Radke, Associate Counsel 


INTRODUCTION

The Veteran, who is the appellant in this case, served honorably on active duty from May 1971 to May 1973. 

This matter comes before the Board of Veterans' Appeals (Board) from a June 2008 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas, which, in pertinent part, granted service connection for bilateral hearing loss and a right inguinal hernia, status post herniorrhaphy with scar, and assigned noncompensable (0 percent) ratings. The current Agency of Original Jurisdiction (AOJ) is in Milwaukee, Wisconsin. 

In April 2014, the Veteran testified at a Travel Board hearing before the undersigned Veterans Law Judge in Milwaukee, Wisconsin. The transcript of the hearing has been associated with the Veteran's claims file. 

This matter was previously remanded by the Board in July 2014 to obtain additional VA examinations to help assess the nature and severity of the bilateral hearing loss and right inguinal hernia. VA examinations were scheduled for September 15, 2014; however, the Veteran failed to report to the examinations. The Veteran has not provided any reason or good cause as to why he was unable to attend the VA examinations; therefore, the Board finds that there has been substantial compliance with the prior remand order. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (noting the Board's duty to "insure [the RO's] compliance" with the terms of its remand orders); D'Aries v. Peake, 22 Vet. App. 97 (2008). Because any favorable evidence that could have been obtained through those examinations was not acquired, the Board will rate the bilateral hearing loss and right inguinal hernia and residuals based on the evidence of record. See 38 C.F.R. § 3.655 (2015). 


FINDINGS OF FACT

1. For the entire initial rating period from March 13, 2007, the Veteran experienced pain from the site of the right inguinal hernia scar. 

2. For the entire initial rating period from February 14, 2007, audiometric and speech recognition testing has revealed, at worst, Level III hearing acuity in the right ear and Level II hearing acuity in the left ear.


CONCLUSIONS OF LAW

1. Resolving reasonable doubt in favor of the Veteran, the criteria for a 10 percent rating, but no higher, for the right inguinal hernia, status post herniorrhaphy with scar, has been more nearly approximated for the entire rating period from March 13, 2007. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.114, 4.118, Diagnostic Codes 7339, 7804, 7805 (2015). 

2. The criteria for a compensable rating for bilateral hearing loss has not been met or more nearly approximated for any part of the initial rating period from February 14, 2007. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.385, 4.1, 4.2, 4.3, 4.7, 4.10, 4.85, 4.86, 4.87, Diagnostic Code 6100 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist 

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159 (2015). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1). Such notice should also address VA's practices in assigning disability evaluations and effective dates for those evaluations. See Dingess v. Nicholson, 19 Vet. App. 473 (2006); see also Hartman v. Nicholson, 19 Vet. App. 473 (2006). This notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

When an initial rating appeal comes before the Board following a decision to grant service connection and assign an initial rating, no additional VCAA notice is required. Courts have held that, once service connection is granted and the claim is substantiated, additional notice is not required, and any defect in the notice is not prejudicial. See Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2006); Dunlap v. Nicholson, 21 Vet. App. 112 (2007); VAOPGCPREC 8-2003 (in which the VA General Counsel interpreted that that separate notification is not required for "downstream" issues following a service connection grant, such as initial rating and effective date claims); 38 C.F.R. § 3.159(b)(3)(i) (no duty to provide VCAA notice upon receipt of a notice of disagreement).

VA satisfied its duty to assist the Veteran in the development of the claim. First, VA satisfied its duty to seek, and assist in the procurement of relevant records. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran, including service treatment records, private treatment records, VA treatment records, VA examination reports, a copy of the April 2014 Board hearing transcript, and lay statements. 

VA satisfied its duty to obtain a medical opinion when required. See 38 U.S.C.A. § 5103A; 38 C.F.R. §§ 3.159(c)(4), 3.326(a); McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006). The Veteran was provided with VA examinations (the reports of which have been associated with the claims file) in January 2008 and January 2012. The Board finds that the VA examination reports, taken in light of the other lay and medical evidence of record, are thorough and adequate and provide a sound basis upon which to base a decision with regard to the issues on appeal. The VA examiners reviewed the claims file, personally interviewed and examined the Veteran, including eliciting a history, conducted an audiological and physical examination, and assessed the Veteran's functional impairment. 

As discussed above, the Board previously remanded this appeal to obtain additional examinations to assess the nature and severity of the bilateral hearing loss and right inguinal hernia with scar; however, the Veteran failed to report to those examinations. The Veteran has not provided explanation or good cause regarding the failure to report to the examination. Individuals for whom examinations have been authorized and scheduled in conjunction with VA compensation claims are required to report for such examinations. 38 C.F.R. § 3.326(a); see also Dusek v. Derwinski, 2 Vet. App. 519 (1992). In light of the Veteran's failure to report to the scheduled examinations and provide good cause for the failure to report, the Board finds that no further action is necessary to meet the requirements of the duty to assist. 38 C.F.R. § 3.655 (2015); see also Wood v. Derwinski, 1 Vet. App. 190, 193 (1991); Olson v. Principi, 3 Vet. App. 480, 483 (1992) (holding that the duty to assist is not always a one-way street, or a blind alley, and that the veteran must be prepared to cooperate with the VA's efforts to provide an adequate medical examination and submit all the medical evidence supporting his claim).

The Veteran testified at an April 2014 Board hearing before the undersigned Veterans Law Judge and a transcript is of record. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the U.S. Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103(c)(2) requires that the Veterans Law Judge who chairs a hearing fulfill two duties to comply with the above regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. During the hearing, the Veterans Law Judge advised the Veteran on submitting evidence regarding the current symptomatology and functional impairment due to the service-connected bilateral hearing loss and right inguinal hernia and scar. See April 2014 Board hearing transcript at 2. Therefore, as VA satisfied its duties to notify and assist the Veteran, the Board finds that there is no further action to be undertaken to comply with the provisions of 38 U.S.C.A. § 5103(a), § 5103A, or 38 C.F.R. § 3.159. 

Disability Rating Criteria 

Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R., Part 4 (2015). Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. 

Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the veteran working or seeking work. 38 C.F.R. § 4.2. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7. When, after careful consideration of the evidence, a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the claimant. 38 C.F.R. § 4.3.

Where, as in this case, the question for consideration is the propriety of the initial ratings assigned, evaluation of the all evidence and consideration of the appropriateness of staged ratings is required whenever the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. See Fenderson v. West, 12 Vet. App. 119, 126 (1999). The Board has considered, and found inappropriate, the assignment of "staged" ratings for any part of the initial rating period. 

Rating Right Inguinal Hernia 

The Veteran generally contends that he is entitled to a compensable rating for the right inguinal hernia, status post herniorrhaphy, with scar. The Veteran contends that the residuals of the hernia, including the scar, are painful and the Veteran described problems with walking upstairs, lifting heavy objects, and sitting for too long because of the pain. See September 2011 substantive appeal (on a VA Form 9); April 2014 Board hearing transcript. 

For the entire rating period on appeal, the right inguinal hernia, status post herniorrhaphy with scar, has been rated under Diagnostic Codes 7338 and 7805 under 38 C.F.R. §§ 4.114, 4.118, respectively. 

Diagnostic Code 7338 rates inguinal hernias. 38 C.F.R. § 4.114. A 60 percent rating is assigned for hernias that are large, postoperative, recurrent, not well supported under ordinary conditions and not readily reducible, when considered inoperable. A 30 percent rating is assigned for hernias that are small, postoperative recurrent, or unoperated irremediable, not supported by truss, or not readily reducible. A 10 percent rating is assigned for hernias that are postoperative recurrent, readily reducible and well supported by truss or belt. A noncompensable (0 percent) rating will be assigned for hernias that are not operated but remediable, or hernias that are small reducible, or without true hernia protrusion. Under Diagnostic Code 7338, 10 percent will be added for bilateral involvement, provided that the second hernia is compensable, evaluating only the most severe hernia, then adding 10 percent if the second hernia is of a compensable degree. 

Diagnostic Code 7805 rates scars, other, including linear scars, and requires the evaluation under the appropriate analogous diagnostic code. 38 C.F.R. § 4.118. Diagnostic Code 7804 rates painful or unstable scars. Under Diagnostic Code 7804, a 10 percent rating is assigned for one or two scars that are unstable or painful. A 20 percent rating is assigned for three or four scars that are unstable or painful. A 30 percent rating is assigned for five or more scars that are unstable or painful. 38 C.F.R. § 4.118. 

Based on the medical and lay evidence, the Board finds that the criteria for a 10 percent rating for the right scar is more nearly approximated under Diagnostic Codes 7804 and 7805. The Board additionally finds that the criteria for a separate compensable rating for a right inguinal hernia under Diagnostic Code 7338 has not been met or more nearly approximated. 

The Veteran was provided with a VA examination in January 2008 to help assess the nature and severity of the right inguinal hernia. At that time, the VA examiner noted that the Veteran was diagnosed with a right inguinal hernia in 2001 and underwent a hernia repair. The examiner noted that there are residuals of sensitivity. The examiner did not find evidence of a recurrence of an inguinal hernia, or other hernia, upon examination. The examiner noted a scar measuring about 8 cm by .1 cm. 

Review of private and VA treatment records show that the Veteran developed a right inguinal hernia while working with the National Guard in August 2001, which underwent a hernia repair. See August 2001 Aurora Heath Care notes. VA treatment records show complaints of pain in the right groin at the sight of the right inguinal hernia. June 2010 VA treatment notes show complaints of burning sensations at the right groin with trouble walking upstairs. Examination did not show any bulging at the site of the previous hernia. August 2010 VA treatment records reveal findings of a well healed right inguinal hernia scar with no obvious recurrence. The Veteran reported not noticing any bulging of the right side. 

In August 2010, the Veteran was treated separately for a nonservice-connected left inguinal hernia. In October 2010, the Veteran underwent the nonservice-connected left hernia repair. The Veteran has not claimed the left inguinal hernia is service connected; therefore, the left inguinal hernia is not compensable. 

Based on the medical and lay evidence of record, the Board finds that a 10 percent rating for the entire initial rating period from March 13, 2007 is warranted under Diagnostic Codes 7804 and 7505. The Veteran has consistently reported pain in the right groin at the site of the right inguinal hernia, consistent with a 10 percent rating for one scar that is painful. The residual surgical scar, status post-operative right inguinal hernia repair, involves only one scar, and the maximum rating for one unstable or painful scar is 10 percent. 38 C.F.R. § 4.118. 

The Board next finds that the weight of the evidence is against a finding that any other Diagnostic Codes for rating scars are applicable. See Schafrath, 1 Vet. App. at 589; see also 38 C.F.R. § 4.118. Under Diagnostic Code 7801, scars other than on the head, face, or neck that are deep (i.e. associated with underlying soft tissue damage) or cause limited motion are evaluated as 10 percent disabling for areas at least 6 square inches in size, 20 percent disabling for areas at least 12 square inches in size, 30 percent disabling for areas at least 72 square inches in size, and 40 percent disabling for areas at least 144 square inches in size. Under Diagnostic Code 7802, a maximum 10 percent disability rating is warranted where a scar that is not on the head, face, or neck is superficial, does not cause limitation of motion, and is at least 144 square inches in size. Because the Veteran's residual scar is 8 cm by .1 cm, these Diagnostic Codes are not applicable. 

Additionally, the Board finds that the Veteran is not entitled to a compensable disability rating under Diagnostic Code 7338 for the right inguinal hernia. The medical and lay evidence, as stated above, demonstrates a well healed, non-recurrent right inguinal hernia. The Veteran has not reported any additional bulging at the site, and examinations have not revealed a new, recurrent hernia. To the extent that the Veteran has residuals of pain and sensitivity, the Board notes that the 10 percent rating granted under Diagnostic Code 7804 rates the pain from the site of the right hernia. As the Board cannot differentiate symptoms of pain from the underlying hernia versus the residual scar from the herniorrhaphy, a second compensable rating for symptoms pain would constitute pyramiding as it would compensate the Veteran for the same symptom twice. See Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994); see also Mittleider v. West, 11 Vet. App. 181, 182 (1998). Therefore, the Board finds that the criteria for one 10 percent rating under Diagnostic Codes 7804 and 7805 have been more nearly approximated. 

Rating Bilateral Hearing Loss 

The Veteran is in receipt of a noncompensable (0 percent) initial disability rating for the service-connected bilateral hearing loss under 38 C.F.R. § 4.85, Diagnostic Code 6100. The Veteran is seeking a higher (compensable) rating for bilateral hearing loss for the entire initial rating period on appeal from February 14, 2007, and generally contends that the bilateral hearing loss warrants a compensable rating and causes functional impairment such as an inability to hear the phone ring, difficulty hearing conversations, and difficulty hearing people at work at times. See April 2014 Board hearing, September 2011 substantive appeal (on a VA Form 9). 

Ratings for bilateral defective hearing range from noncompensable (0 percent) to 100 percent based on organic impairment of hearing acuity as measured by the results of controlled speech discrimination tests, together with the average hearing threshold level as measured by pure tone audiometric tests at the frequencies of 1000, 2000, 3000, and 4000 cycles per second (Hertz or Hz). To evaluate the degree of disability from bilateral defective hearing, the rating schedule establishes 11 auditory acuity levels designated from Level I, for essentially normal acuity, through Level XI, for profound deafness. 38 C.F.R. § 4.85. Pursuant to VA's rating schedule, the assignment of a disability rating for hearing impairment is derived by a purely mechanical application of the rating schedule to the numeric designations derived from the results of audiometric evaluations. Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992). 

Table VIA, "Numeric Designation of Hearing Impairment Based Only on Pure Tone Threshold Average," is used to determine a Roman numeral designation (I through XI) for hearing impairment based only on the pure tone threshold average. Table VIA will also be used when the examiner certifies that use of the speech discrimination test is not appropriate because of language difficulties, inconsistent speech discrimination scores, etc., or when indicated under the provisions of 38 C.F.R. § 4.86. 38 C.F.R. § 4.85(c). 

Under 38 C.F.R. § 4.86, when the pure tone threshold at each of the four specified frequencies (1000, 2000, 3000, and 4000 Hertz ) is 55 decibels or more, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIA, whichever results in the higher numeral. Each ear will be evaluated separately. 38 C.F.R. § 4.86(a). Similarly, if the pure tone threshold is 30 decibels or less at 1000 Hz and 70 decibels or more at 2000 Hz, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIA, whichever results in the higher numeral, and that numeral will be elevated to the next higher Roman numeral. 38 C.F.R. § 4.86(b). 

The Board can accept and rate based on private audiometric test scores that are provided in graph form. See Kelly v. Brown, 7 Vet. App. 471, 474 (1995) (noting that, because interpreting results from an audiometric graph involves fact finding, the Court is precluded from engaging in such fact finding in the first instance, and remanding in part because the Board did not discuss the results of the private audiometric testing); see also Savage v. Shinseki, 24 Vet. App. 249 (2011) (noting the Board may interpret results from a private audiometric graph, if it felt it had the expertise, and holding that the Board may not ignore such private audiometric test results that are of record).

After considering all the evidence, lay and medical, the Board finds that, for the entire initial rating period on appeal, the weight of the competent and probative lay and medical evidence demonstrates that a compensable initial disability rating for the service-connected bilateral hearing loss is not warranted. For the entire initial rating period, the Veteran's bilateral hearing loss disability has exhibited no worse than Level III hearing in the right ear and Level II hearing in the left ear.

VA treatment records show that audiology testing was performed in July 2007. At that time, the audiometric results were as follows: 
 




HERTZ



500
1000
2000
3000
4000
RIGHT
20
20
60
65
65
LEFT
20
15
45
55
55

The puretone threshold average for the right ear was 52.5, and 42.5 for the left ear. The speech recognition scores using the Maryland CNC list revealed speech recognition ability of 96 percent for both years. Applying the July 2007 findings to Table VI in 38 C.F.R. § 4.85 yields a finding of Level I hearing loss in the right ear and Level I hearing loss in the left ear, which warrants a noncompensable (0 percent) rating under Table VII. 38 C.F.R. § 4.85. 

The Board additionally finds that the hearing impairment does not more nearly approximate the requirements under 38 C.F.R. § 4.86 for exceptional patterns of hearing loss as the pure tone threshold at 1000 Hertz for both the left and right ears is well under 55 decibels, and while the puretone threshold at 1000 Hertz is under 30 decibels, the puretone threshold at 2000 Hertz is not 70 decibels or more for either ear. Furthermore, while the right ear's pure tone thresholds at 2000, is 60 decibels and close to 70, the Board finds that even if the Board were to use the Roman numeral designation for hearing impairment from Table VIA, it will not result in a higher rating, as a finding of Level III hearing loss in the right ear and Level I hearing loss in the left ear still warrants a noncompensable rating under Table VII. 38 C.F.R. § 4.85. 

In January 2008, the Veteran was afforded a VA examination to assess the nature and severity of the current hearing loss. The Veteran reported functional impairment of difficulty hearing. At that time, the audiometric results were as follows:
 




HERTZ



500
1000
2000
3000
4000
RIGHT
10
10
45
60
65
LEFT
10
10
30
45
55

The puretone threshold average for the right ear was 45 and 35 for the left ear. The speech recognition scores using the Maryland CNC list revealed speech recognition ability of 80 percent in the right ear and 92 percent in the left ear. Applying the January 2008 findings to Table VI in 38 C.F.R. § 4.85 yields a finding of Level III hearing loss in the right ear and Level I hearing loss in the left ear, which warrants a noncompensable (0 percent) rating under Table VII. 38 C.F.R. § 4.85. Again, the Board finds that the hearing impairment does not more nearly approximate the requirements under 38 C.F.R. § 4.86 for exceptional patterns of hearing loss as the pure tone threshold at 1000 Hertz for both the left and right ears is well under 55 decibels, and none of the pure tone thresholds at 2000, 3000, or 4000 Hertz are 70 decibels or greater for either ear, with the puretone threshold average at 2000 Hertz being well under 70. 38 C.F.R. § 4.86. Therefore, the Board will not apply Table VIA for exceptional patterns of hearing loss. 

In October 2008, VA treatment records show additional audiometric testing. At that time, the audiometric results were as follows: 
 




HERTZ



500
1000
2000
3000
4000
RIGHT
25
35
50
60
70
LEFT
20
20
45
55
60

The puretone threshold average for the right ear was 53.75 and 45 for the left ear. While speech recognition testing was performed, the Maryland CNC list was not used, and the speech recognition results are inadequate as required by VA regulation. 38 C.F.R. § 4.85(a). An examination for hearing impairment "must include a controlled speech discrimination test (Maryland CNC)" and a puretone audiometry test. 38 C.F.R. § 4.85(a). Nonetheless, even applying the Roman numeral designation for hearing impairment from Table VIA without considering speech recognition testing, the Veteran would have Level III hearing loss in the right ear and Level II hearing loss in the left ear, and the Veteran would still be in receipt of a noncompensable rating under Table VII. 38 C.F.R. § 4.85. 

In October 2011, VA treatment records show further audiometric testing. At that time, the audiometric results were as follows: 





HERTZ



500
1000
2000
3000
4000
RIGHT
20
25
65
65
70
LEFT
20
20
50
60
65

The puretone threshold average for the right ear was 56.25 and 48.75 for the left ear. The speech recognition scores using the Maryland CNC list revealed speech recognition ability of 84 percent in the right ear and 86 percent in the left ear. Applying the October 2011 findings to Table VI in 38 C.F.R. § 4.85 yields a finding of Level II hearing loss in the right ear and Level II hearing loss in the left ear, which warrants a noncompensable (0 percent) rating under Table VII. 38 C.F.R. § 4.85. 

Again, the Board additionally finds that the hearing impairment does not more nearly approximate the requirements under 38 C.F.R. § 4.86 for exceptional patterns of hearing loss as the pure tone threshold at 1000 Hertz for both the left and right ears is well under 55 decibels, and while the puretone threshold at 1000 Hertz is under 30 decibels, the puretone threshold at 2000 Hertz is not 70 decibels or more for either ear. Nonetheless, again, while the right ear puretone thresholds at 2000 is 65 decibels and therefore close to 70, the Board finds that, again, using the Roman numeral designation for hearing impairment from Table VIA will not result in a higher rating, as a finding of Level IV hearing loss in the right ear and Level II hearing loss in the left ear still warrants a noncompensable rating under Table VII. 38 C.F.R. § 4.85. 

In January 2012, the Veteran was afforded another VA examination to assess the nature and severity of the bilateral hearing loss. The Veteran reported functional impairment of having trouble with his hearing aids and difficulty hearing over the telephone. At that time, the audiometric findings were as follows: 





HERTZ



500
1000
2000
3000
4000
RIGHT
25
25
60
65
70
LEFT
20
20
55
65
65

The puretone threshold average for the right ear was 55 and 51.25 for the left ear. The speech recognition scores using the Maryland CNC list revealed speech recognition ability of 84 percent in both ears. Applying the January 2012 findings to Table VI in 38 C.F.R. § 4.85 yields a finding of Level II hearing loss in the right ear and Level II hearing loss in the left ear, which warrants a noncompensable (0 percent) rating under Table VII. 38 C.F.R. § 4.85. Again, the Board additionally finds that the hearing impairment does not more nearly approximate the requirements under 38 C.F.R. § 4.86 for exceptional patterns of hearing loss as the puretone threshold at 1000 Hertz for both the left and right ears is well under 55 decibels, and the pure tone thresholds at 2000 Hertz are not 70 decibels or greater for either ear. Additionally, as discussed above, while the pure tone thresholds of the right ear at 2000 is close to 70, the Board finds that using the Roman numeral designation for hearing impairment from Table VIA will not result in a higher rating, as a finding of Level III hearing loss in the right ear and Level II hearing loss in the left ear warrants a noncompensable rating under Table VII. 38 C.F.R. § 4.85. 

The Board has reviewed and considered the Veteran's statements regarding functional loss due to hearing impairment, including difficulty hearing conversations, difficulty hearing the telephone ring, and difficulty hearing telephone conversations. See April 2014 Board hearing, January 2012 VA examination report, September 2011 substantive appeal (on a VA Form 9). While these statements do paint a picture of the difficulty caused by the hearing impairment, these statements and medical evidence do not establish that an initial compensable rating is warranted for any part of the appeal period because a schedular rating is determined from the application of mechanical audiometric testing and speech recognition scores. Importantly, the percentage bilaterally of speech recognition reflects high speech discrimination ability throughout the rating period on appeal. 

Despite the Veteran's contention that the service-connected bilateral hearing loss is severe enough to warrant a compensable rating for this period, the application of the rating schedule to the audiometric findings does not establish entitlement to a compensable disability rating for the entire initial rating period on appeal. The Board does not find evidence that the rating assigned for the Veteran's bilateral hearing loss should be higher based on the facts found during the above-referenced period. The weight of the competent and probative lay and medical evidence of record is against an initial compensable disability rating during the above-referenced period. For these reasons, the Board finds that a preponderance of the evidence is against the appeal for an initial compensable rating for bilateral hearing loss for the entire initial rating period on appeal. Because the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application. See 38 U.S.C.A. § 5107; 38 C.F.R. §§ 4.3, 4.7.

Extraschedular and TDIU Referral Analysis 

The Board has considered whether referral for an extraschedular rating would have been warranted for the bilateral hearing loss or right inguinal hernia, status post herniorrhaphy with scar for any part of the rating period. In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321 (2015). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Thun v. Peake, 22 Vet. App. 111 (2008).

Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. In the second step of the inquiry, however, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). When the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step-a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating. Id.

Turning to the first step of the extraschedular analysis, the Board finds that the symptomatology for both bilateral hearing loss and the right inguinal hernia with scar is contemplated by the rating schedule, and no referral for extraschedular consideration is warranted. Regarding bilateral hearing loss, the Veteran stated the functional loss from the bilateral hearing loss is difficulty hearing conversations, hearing the phone ring, and understanding telephone conversations. The Veteran stated that at work, he must be very close to others to hear them properly and he must put his walkie-talkie on the highest volume setting. The Veteran additionally has stated he has trouble with his hearing aids. Nonetheless, the schedular rating criteria specifically provide for ratings based on all levels of hearing loss, including exceptional hearing patterns, which are not demonstrated in this case, and as measured by both audiology testing and speech recognition testing. The Veteran's complaints involve diminished auditory acuity and speech recognition. Diminished auditory acuity and speech recognition testing are the foundation of the schedular criteria. Moreover, the testing is to be performed without the use of hearing aids. See 38 C.F.R. § 4.85(a). The scores represent a rating made on the worst possible objective measure of performance. In short, the Veteran does not have any symptoms or functional impairment from the service-connected bilateral hearing loss disability that is unusual or is different from those contemplated by the schedular rating criteria. See Martinak v. Nicholson, 21 Vet. App. 447, 455 (2007) (in addition to providing objective test results, a VA audiometric examination report must address the functional effects caused by a hearing disability because an extraschedular rating under 38 C.F.R. § 3.321(b) "does not rely exclusively on objective test results to determine whether a referral for an extraschedular rating is warranted."). 

Regarding the right inguinal hernia and scar, the Board finds that all the symptomatology and functional impairments are contemplated by the schedular rating criteria. The Veteran reports symptoms of pain that impact his ability to walk up the stairs, lift heavy objects, and sit for extended periods of time. Nonetheless, the schedular criteria under Diagnostic Code 7804 and 7805 specifically contemplate pain, which VA recognizes can cause functional impairment, such as interference with sitting, lifting, and walking up stairs. Additionally, as discussed above, the Board cannot differentiate whether there is pain from the underlying hernia repair or solely the scar, and a second compensable rating for pain not caused by the scar would constitute pyramiding. See Esteban, 6 Vet. App. at 261-62; see also Mittleider, 11 Vet. App. at 182. Therefore, the Board finds that the symptoms of pain as a residual of the right inguinal hernia repair and scar is not unusual or different from the symptoms contemplated by the schedular rating criteria. 

According to Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be entitled to "consideration [under 38 C.F.R. § 3.321(b)] for referral for an extra-schedular evaluation based on multiple disabilities, the combined effect of which is exceptional and not captured by schedular evaluations." Referral for an extraschedular rating under 38 C.F.R. § 3.321(b) is to be considered based upon either a single service-connected disability or upon the "combined effect" of multiple service-connected disabilities when the "collective impact" or "compounding negative effects" of the service-connected disabilities, when such presents disability not adequately captured by the schedular ratings for the service-connected disabilities. 

In this case, the Veteran has not asserted, and the evidence of record has not suggested, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. In this case, there is neither allegation nor indication that the collective impact or combined effect of more than one service-connected disability presents an exceptional or unusual disability picture to render inadequate the schedular rating criteria. 

The schedule is intended to compensate for average impairments in earning capacity resulting from service-connected disability in civil occupations. 38 U.S.C.A. § 1155. "Generally, the degrees of disability specified [in the rating schedule] are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability." 38 C.F.R. § 4.1. In this case, the problems reported by the Veteran are specifically contemplated by the criteria discussed above, including the effect on his daily life. In the absence of exceptional factors associated with the bilateral hearing loss and right inguinal hernia and scar, the Board finds that the criteria for submission for assignment of an extraschedular rating pursuant to 38 C.F.R. § 3.321(b)(1) are not met. See Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).

The Court, in Rice v. Shinseki, 22 Vet. App. 447 (2009), held that a claim for a total rating based on individual unemployability due to service-connected disability (TDIU), either expressly raised by the veteran or reasonably raised by the record, involves an attempt to obtain an appropriate rating for a disability and is part of the claim for an increased rating. In this case, the Veteran has not contended, and the record does not otherwise suggest, that the bilateral hearing loss and right inguinal hernia and scar disabilities render him unemployable, but rather the evidence of record demonstrates the Veteran currently is working. See January 2012 VA examination report. Accordingly, the Board concludes that a claim for TDIU has not been raised by the Veteran or the evidence of record.


ORDER

A higher initial disability rating of 10 percent, but no higher, for a right inguinal hernia, status post herniorrhaphy with scar, is granted. 

A higher (compensable) initial disability rating for bilateral hearing loss is denied. 



____________________________________________
J. Parker 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs