Citation Nr: 1725238 
Decision Date: 06/30/17 Archive Date: 07/10/17

DOCKET NO. 13-21 943 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to a rating in excess of 50 percent for schizophrenia.

2. Entitlement to a total disability rating based on individual unemployability.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

R. Connally, Associate Counsel


INTRODUCTION

The Veteran, who is the appellant in this case, had service from December 1950 to September 1953.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from an August 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida.

The Veteran was scheduled to appear at a Board hearing, but submitted timely correspondence in May 2016 to withdraw this request. Accordingly, the request is deemed withdrawn and the Board may proceed with adjudication. 38 C.F.R. § 20.704(d) (2016).

A claim for TDIU was raised by the record. Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009) ("... if the claimant or the evidence of record reasonably raises the question of whether the Veteran is unemployable due to a disability for which an increased rating is sought, then part and parcel with the increased rating claim is the issue whether a TDIU is warranted as a result of that disability.")

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. Throughout the appeal period, the Veteran's schizophrenia was productive of mild symptoms that were not severe enough to interfere with occupational and social functioning.

2. The Veteran is in receipt of service connection for schizophrenia, evaluated as 50 percent disabling and a fracture of the right fifth metacarpal, evaluated as noncompensable. 

3. Service-connected disabilities do not render the Veteran unable to secure or follow substantially gainful employment.


CONCLUSIONS OF LAW

1. The criteria for a disability rating in excess of 50 percent for the service-connected schizophrenia have not been met or more nearly approximated throughout the period on appeal. 38 U.S.C.A. §§ 1155, 5103(a), 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.3, 4.7, 4.130, Diagnostic Code 9205 (2016).

2. The criteria for entitlement to TDIU have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.340, 3.655, 4.16 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Rating for Schizophrenia

In January 2011, the Veteran submitted a claim for an increased rating for his service-connected schizophrenia, currently rated at 50 percent, effective January 30, 1998. 38 C.F.R. § 4.130, Diagnostic Code 9205.

Disability ratings are determined by applying the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate Diagnostic Codes. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2016). The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10. 

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disability. 38 C.F.R. § 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7. When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant. 38 C.F.R. § 4.3. 

Where, as here, an increase in the level of a disability is at issue, the primary concern is the present level of disability. Francisco v. Brown, 7 Vet. App. 55 (1994). Where the evidence contains factual findings that demonstrate distinct time periods in which the service-connected disability exhibits symptoms that would warrant different evaluations during the course of the appeal, the assignment of staged ratings is appropriate. See Hart v. Mansfield, 21 Vet. App. 505 (2007). If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

Additionally, the evaluation of the same disability under several Diagnostic Codes, known as pyramiding, must be avoided. Separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of or overlapping with the symptomatology of the other condition. 38 C.F.R. § 4.14; Esteban v. Brown, 6 Vet. App. 259, 262 (1994).

Schizophrenia rated under the General Rating Formula for Mental Disorders. See 38 C.F.R. § 4.130, Diagnostic Code (DC or Code) 9205. Under this General Rating Formula, a 50 percent rating is warranted for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. 38 C.F.R. § 4.130.

A 70 percent rating is warranted for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships. Id.

Finally, a total, or 100 percent, rating is awarded on evidence of total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

The VA Secretary, acting within his authority to "adopt and apply a schedule of ratings," chose to create one General Rating Formula for Mental Disorders. 
38 U.S.C. §§ 501, 1155; 38 C.F.R. § 4.130. By establishing one general formula to be used in rating more than 30 mental disorders, there can be no doubt that the Secretary anticipated that any list of symptoms justifying a particular rating would in many situations be either under- or over-inclusive. The Secretary's use of the phrase "such symptoms as," followed by a list of examples, provides guidance as to the severity of symptoms contemplated for each rating, in addition to permitting consideration of other symptoms, particular to each veteran and disorder, and the effect of those symptoms on the claimant's social and work situation. Mauerhan v. Principi, 16 Vet. App. 436, 443 (2002) (holding that "the evidence considered in determining the level of impairment under § 4.130 is not restricted to the symptoms provided in the diagnostic code. Instead, the rating specialist is to consider all symptoms of a claimant's condition that affect the level of occupational and social impairment").

In Vazquez-Claudio v. Shinseki, 713 F.3d 112, 117 (2013), the Federal Circuit held that VA "intended the General Rating Formula to provide a regulatory framework for placing veterans on a disability spectrum based upon their objectively observable symptoms." The Federal Circuit stated that "a veteran may only qualify for a given disability rating under § 4.130 by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration." It was further noted that "§ 4.130 requires not only the presence of certain symptoms but also that those symptoms have caused occupational and social impairment in most of the referenced areas." Id. 

In evaluating the Veteran's level of disability, the Board has considered the Global Assessment of Functioning (GAF) scale scores as one component of the overall disability picture. GAF is a scale used by mental health professional and reflects psychological, social, and occupational functioning on a hypothetical continuum of mental health illness and is relevant in evaluating mental disability. See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995); see also Richard v. Brown, 9 Vet. App. 266, 267 (1996), citing Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV). 

GAF scores between 70 and 61 reflect some mild symptoms (e.g., depressed mood and mild insomnia), or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, and with some meaningful relationships. Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994). Scores in the 51 to 60 range indicate moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers. Id. GAF scores from 50 to 41 indicate serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Id.

The Board has reviewed all the evidence in the Veteran's claims file, with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Hence, the Board will summarize the relevant evidence where appropriate and the Board's analysis below will focus specifically on what the evidence shows, or fails to show, as to the current appeal.

After a review of all the evidence of record, lay and medical, the Board finds that the Veteran's psychiatric symptoms meet or more nearly approximate the criteria for a 50 percent rating, but not higher. The evidence of record reflects that the Veteran's schizophrenia was not currently severe enough to interfere with occupational and social functioning. 

The Veteran received a VA examination in March 2011 to evaluate his current psychiatric symptoms. The Veteran had an appropriate affect with no attention difficulties and displayed a happy mood. His orientation was normal, and his thought process and content were unremarkable. There were no delusions noted. The Veteran's remote, recent, and immediate memory were all found to be normal. Attention, insight, and judgment were also intact. The Veteran denied having the following symptoms: delusions, poor judgment, difficulties with thought process, hallucinations, inappropriate behaviors, panic attacks, homicidal or suicidal thoughts, difficulties with activities of daily living, problems with social interactions or with family, and difficulty managing finances. The Veteran did report only sleeping for a few hours a night, and was often tired throughout the day. The examiner noted that the Veteran was retired due to his age. The examiner reported that the Veteran had mild symptoms that have not changed since the last evaluation and did not require medication. The examiner continued the previously diagnosed schizophrenia and assigned a GAF score of 70. Ultimately, the examiner found that the Veteran's mental disorder symptoms were not severe enough to interfere with occupational and social functioning.

The Veteran submitted a Notice of Disagreement in September 2011 and stated, with regard to the March 2011 VA examination results, that his mental faculties "are not necessarily visible on the outward observation." He also said that his current physical and mental health symptoms have become "considerably diminished and at an accelerated rate in recent months." However, he did not describe how his current symptoms have changed.

Subsequent correspondence from the Veteran details his current financial difficulties, to include inability to repair a leaking roof, an old refrigerator "on its last gasp," and a broken counter-top range. See Correspondence, received November 14, 2012.

VA treatment records from June 2012 show that the Veteran was evaluated for mental health symptoms following a motor vehicle accident in April 2012. He was found to have "poor coping strategies such as decrease in sleep" due to "emotional difficulties" since the motor vehicle accident. He was diagnosed with adjustment disorder with anxiety and given a GAF score of 70. Another VA treatment record from December 2013 indicated receipt of individual therapy due to a "bad week last week," but note that the Veteran was feeling much better since then. He denied any feelings of depression or anxiety at the time and that he had it "under control now." His mood was described as euthymic. He was encouraged to apply for a home repair grant from his local municipality and to also seek assistance from his church. There were no abnormalities noted regarding social and emotional observations. He was diagnosed unspecified depressive disorder.

The Board has considered the Veteran's statements of record that a higher disability rating is warranted for his psychiatric disability. The Veteran is competent to report symptomatology relating to his schizophrenia because this requires only personal knowledge as it comes to him through his senses. Layno, 6 Vet. App. at 470. The Board finds that the question of the severity of his schizophrenia is medically complex in nature. Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (although the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions). To the extent that the Veteran alleges greater severity, the Board finds that the probative value of his allegations is outweighed by the aforementioned examiner's findings. Competent evidence concerning the nature and extent of the Veteran's disability has been provided by the VA examiner during the current appeal and provided relevant medical findings in conjunction with the examination. In this regard, the medical findings (as provided in the examination report) directly address the evaluation criteria for this disability.

Unfortunately, while the Board is sympathetic to the Veteran's situation, the increase in cost of living and repairs for such items as a leaking roof or broken refrigerator and oven range is not relevant to the evaluation of a psychiatric disability. The Veteran's schizophrenia disability is currently rated at 50 percent in recognition of the impairment it causes in his life. However, he has not received any psychiatric substantive treatment for his condition in several decades, and he is not currently taking any psychiatric medication. The Veteran has sent in several letters throughout the course of his appeal, arguing that he is struggling. However, his arguments are entirely based either on physical symptoms that are unrelated to schizophrenia, or on financial duress. His arguments do not assert that his psychiatric symptoms have worsened.

While the Veteran complained that the VA examination was short in duration and "based on only very limited external observations," there is no indication that it was incomplete, or that it omitted any critical areas that are necessary for evaluating a psychiatric disability. See Notice of Disagreement, received September 22, 2011. Other VA treatment records throughout the period on appeal show that the Veteran has been involved in a relationship, he was active in his church, and he socialized regularly. While this may be the case, the Veteran is currently assigned a 50 percent rating for his schizophrenia in recognition of the fact that the disability does limit him in some ways. 

What the findings of the VA examination and VA treatment records do show though is that the Veteran's psychiatric symptomatology is not of the severity to warrant a 70 percent rating. The Veteran has not had any suicidal ideation or obsessional rituals during the course of his appeal. His speech has been normal, and the Veteran has submitted several hand-written letters, which are clear and well reasoned. There is no evidence that the Veteran has had a problem with impulse control, as he is always pleasant and cooperative at his VA medical appointments. In addition, the examiner found no evidence of inappropriate behavior and the Veteran's insight and judgment were adequate. It is also clear that the Veteran is able to establish and maintain relationships. He regularly attends church, and he reports socializing. Accordingly, the Board finds that the VA treatment records as well as the VA examination opinion and findings are of greater probative value than the Veteran's allegations regarding the severity of his psychiatric disorder. 

In December 2016, the Veteran was given another opportunity to assess his psychiatric symptoms, but refused another VA examination. VA's duty to assist in developing the facts and evidence pertinent to a veteran's claim is not a one-way street, and it is the responsibility of veterans to cooperate with VA with regard to development. See Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). Given the Veteran's actions, and VA's offers to assist him in developing the claim, the Board finds that VA has no additional duty with regard to scheduling a VA examination to assess the current nature and severity of his mental health symptoms. See Caffrey v. Brown, 6 Vet. App. 377, 383 (1994); Olson v. Principi, 3 Vet. App. 480, 483 (1992).

Based on the foregoing, the weight of the evidence, both lay and medial, shows that the Veteran's psychiatric symptoms cause social and occupational impairment that more closely reflects the criteria for a 50 percent disability rating. The evidence throughout this period does not demonstrate that the severity of the Veteran's psychiatric disorders was manifested by occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood. The VA examiner did not find the Veteran's symptoms to interfere with his routine activities. Speech was not intermittently illogical, obscure, or irrelevant; at all times of record during this period, the Veteran was able to converse with the examiner or other treatment providers in a clear, coherent manner. The Veteran did not exhibit near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; the examiner of record during this time found the Veteran able to maintain personal hygiene, finances, and household without assistance.

Furthermore, the Veteran's symptoms noted during the course of the appeal (sleep disturbances, depression, and anxiety) have not been demonstrated to be so frequent and disabling as to result in occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood. 

Accordingly, the Board concludes that the Veteran's acquired psychiatric disorder has been 50 percent disabling, but no higher, for the entire increased rating period on appeal; therefore, an increased disability rating in excess of 50 percent for the service-connected schizophrenia is not warranted. All evidence has been considered and there is no doubt to be resolved. See 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 4.3, 4.7.

Extraschedular Consideration

The Board has also considered whether referral for an extraschedular rating is warranted for the service-connected schizophrenia. In exceptional cases where schedular disability ratings are found to be inadequate, consideration of an extra-schedular disability rating is made. 38 C.F.R. § 3.321(b)(1). There is a three-step analysis for determining whether an extra-schedular disability rating is appropriate. See Thun v. Peake, 22 Vet. App. 111 (2008). 

First, there must be a comparison between the level of severity and symptomatology of the Veteran's service-connected disability and the established criteria found in the rating schedule to determine whether the Veteran's disability picture is adequately contemplated by the rating schedule. Id. 

If not, the second step is to determine whether the claimant's exceptional disability picture exhibits other related factors identified in the regulations as "governing norms." Id.; 38 C.F.R. § 3.321(b)(1) (governing norms include marked interference with employment and frequent periods of hospitalization). 

If the factors of step two are found to exist, the third step is to refer the case to the Under Secretary for Benefits or the Director of Compensation Service for a determination concerning whether, to accord justice, the claimant's disability picture requires the assignment of an extra-schedular rating. Id. 

In this case, the schedular rating criteria used to rate the Veteran's service-connected schizophrenia above, reasonably describe and assess the Veteran's disability level and symptomatology. The criteria rate the disability on the basis of a combination of historical and clinical findings; thus, the demonstrated manifestations specifically associated with the service-connected acquired psychiatric disorders - namely sleep disturbances, anxiety and depression - are contemplated by the provisions of the rating schedule as previously outlined in 38 C.F.R. § 4.130, DC 9205. As the Veteran's disability picture for the entire appeal period is contemplated by the rating schedule, the assigned schedular evaluation is adequate and the first step of Thun has not been met. 

Additionally, he has not alleged or indicated that the collective impact or combined effect of more than one service-connected disability presents an exceptional or unusual disability picture to render inadequate the schedular rating criteria. See Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014). For these reasons, the Board finds that the schedular rating criteria is adequate to rate the Veteran's schizophrenia, and referral for consideration of an extra-schedular evaluation is not warranted.

TDIU Consideration

The Veteran contends that he is entitled to total disability rating due to individual unemployability.

TDIU may be assigned where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability ratable at 60 percent or more, or as a result of two or more disabilities, provided at least one disability is ratable at 40 percent or more, and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.34l, 4.16(a). Where the combined rating percentage requirements are not met, entitlement to the benefits may be nonetheless considered when the veteran is unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities. 38 C.F.R. § 4.16(b).

Marginal employment shall not be considered substantially gainful employment, and generally shall be deemed to exist when a veteran's earned income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person. Marginal employment may also be held to exist, on a facts-found basis (includes but is not limited to employment in a protected environment such as a family business or sheltered workshop), when earned annual income exceeds the poverty threshold. Consideration shall be given in all claims to the nature of the employment and the reason for termination. 38 C.F.R. § 4.16(a). The central inquiry is, "whether the veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Neither nonservice-connected disabilities nor advancing age may be considered in the determination. 38 C.F.R. §§ 3.341, 4.19 (2009); Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993).

A claim for TDIU is essentially a claim for an increased rating insofar as it acts as an alternate way to obtain a total disability rating without recourse to a 100 percent evaluation under the rating schedule. Norris v. West, 12 Vet. App. 413, 420-21 (1999). 

The Board finds that the Veteran does not meet the schedular requirements for an award of TDIU under 4.16(a) because he is only service connected for two disabilities, which combined only total 50 percent, and none of them are greater than 50 percent. See also Fast Letter 13-13 (June 17, 2013) (clarifying that the reference in 4.16(a) to two or more disabilities should be interpreted as applying to cases where no single disability is sufficient to meet the 60 percent criterion.). 

However, TDIU may be granted alternatively on an extra-schedular basis under § 4.16(b) if it is established that the Veteran is indeed unable to seek or maintain substantially gainful employment on account of his service-connected disabilities.

Nevertheless, it is the established policy of VA that all Veterans who are individually unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. 38 C.F.R. § 4.16 (b). In other words, even where the percentage requirements are not met, entitlement to TDIU on an extraschedular basis may be granted in exceptional cases where the Veteran is unable to secure and follow a substantially gainful occupation by reason of his service-connected disabilities. 38 C.F.R. § 4.16 (b).

The March 2015 rating decision denied TDIU because the Veteran did not submit evidence that clearly and factually shows he is rendered unemployable solely due to his service-connected disabilities. On his June 2014 application for TDIU, the Veteran reported having one year of college. He described a past history in sales and construction trades. The Board notes that the current evidence of record includes a VA examination medical opinion from March 2011, which noted the Veteran's usual occupation was home improvement work and indicated the Veteran was not currently employed as he had been retired since 1995 and was eligible by age or duration of work. After considering the examination and the record the examiner stated that the Veteran had mild symptoms that currently did not require medication and further noted that the Veteran's mental disorder symptoms were not severe enough to interfere with occupational or social functioning.

The Board finds the March 2011 VA examination to be very probative as the examiner reviewed the record, examined the Veteran and provided a rationale. Furthermore, VA treatment records also do not reflect the condition prevents the Veteran from securing or following substantially gainful employment. 

Because the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine does not apply, and the claim for entitlement to TDIU must be denied. 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990); Ortiz v. Principi, 274 F. 3d 1361 (Fed. Cir. 2001).


Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2016). For an increased-compensation claim, the U.S. Court of Appeals of Veterans Claims (the Court) has held that § 5103(a) required, at a minimum, that VA notify the claimant that, to substantiate a claim, the medical or lay evidence must show a worsening or increase in severity of the disability. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (2009). Such notice was provided in the letter sent to the Veteran in February 2011. The Veteran was also provided a VCAA notice regarding development of his total disability based on individual unemployability claim in December 2014. Based on the foregoing, adequate notice was provided to the Veteran prior to the transfer and certification of this case to the Board and complied with the requirements of 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b), and no further notice is needed under VCAA.

Next, VA has a duty to assist a veteran in the development of the claim. To that end, VA must make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159; see Golz v. Shinseki, 590 F.3d 1317, 1320-21 (2010) (stating that the "duty to assist is not boundless in its scope" and "not all medical records . . . must be sought - only those that are relevant to the veteran's claim"). Here, service records have been obtained as have records of VA treatment. Based on the foregoing, the Board finds that VA has met its duty to assist with regard to records development.

The Veteran was afforded a VA examination with respect to his claim in March 2011. During the examination, the VA examiner conducted a mental examination of the Veteran, was provided the claims file for review, took down the Veteran's history, considered the lay evidence presented, laid factual foundations for the conclusions reached, and reached conclusions and offered opinions based on history and examinations that are consistent with the record. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion has been met regarding the matter on appeal. 38 C.F.R. § 3.159(c)(4); Sickels v. Shinseki, 643 F.3d 1362 (Fed. Cir. 2011) (holding that the Board is entitled to presume the competence of a VA examiner and the adequacy of their opinion).

All necessary development has been accomplished; therefore, appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). In addition to the evidence discussed above, the Veteran's statements in support of the claim are also of record. The Board has carefully considered such statements, and concludes that no available outstanding evidence has been identified. Additionally, the Board has reviewed the medical records for references to additional treatment reports not of record, but has found nothing to suggest that there is any outstanding evidence with respect to the Veteran's claim. For these reasons, the Board finds that the duties to notify and assist the Veteran in the development of this claim have been met, so that no further notice or assistance to the Veteran is required to fulfill VA's duty to assist. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001).

As noted in the Introduction, the Board previously remanded this claim in November 2016. The Board instructed the AOJ to schedule the Veteran for another VA examination and to then readjudicate the claim on appeal with consideration of the additional evidence associated with the claims folder. Since that time, VA issued a supplemental statement of the case that considered the additional, new evidence. As a result, the Board finds substantial compliance with its previous remand instructions, and has properly continued with the foregoing decision. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (noting the Board's duty to "insure [the RO's] compliance" with the terms of its remand orders).




ORDER

A rating in excess of 50 percent for service-connected schizophrenia is denied.

A total disability rating based on individual unemployability is denied.



____________________________________________
H. SEESEL
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs