Citation Nr: 1829745 
Decision Date: 07/24/18 Archive Date: 08/02/18

DOCKET NO. 14-36 192 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Salt Lake City, Utah


THE ISSUES

1. Whether new and material evidence has been received sufficient to reopen a claim of entitlement to service connection for bilateral hearing loss (BHL), and if so, whether service connection is warranted.

2. Whether new and material evidence has been received sufficient to reopen a claim of entitlement to service connection for chronic obstructive pulmonary disease (COPD), and if so, whether service connection is warranted.


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Veteran

ATTORNEY FOR THE BOARD

J. L. Burroughs, Associate Counsel


INTRODUCTION

The Veteran served on active duty from June 1977 to July 1981.

These matters are on appeal from a February 2014 decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Salt Lake City, Utah.

In June 2015, the Veteran testified at a Travel Board Hearing before the undersigned. A transcript of that hearing is of record.


FINDINGS OF FACT

1. The RO denied the Veteran's claim for entitlement to service connection for BHL in February 2010.

2. The evidence received since the February 2010 rating decision includes evidence that relates to unestablished facts necessary to substantiate the claim for service connection is neither cumulative nor redundant of evidence already of record, and raises a reasonable possibility of substantiating the claim.

3. The RO denied the Veteran's claim for entitlement to service connection for COPD in February 2011.

4. The evidence received since the February 2011 rating decision includes evidence that relates to unestablished facts necessary to substantiate the claim for service connection is neither cumulative nor redundant of evidence already of record, and raises a reasonable possibility of substantiating the claim.

5. The evidence of record is insufficient to establish service connection for BHL.

6. The Veteran's diagnosed COPD did not manifest during service, and is not shown to be causally or etiologically related to service, to include claimed exposure to hazardous chemicals during service.


CONCLUSIONS OF LAW

1. The RO's February 2010 decision denying the Veteran's claim of entitlement to service connection for BHL is final. 38 U.S.C. § 7105 (2012); 38 C.F.R. § 20.1103 (2017).

2. The criteria for reopening the claim of entitlement to service connection for BHL have been met. 38 U.S.C § 5108 (2012); 38 C.F.R. § 3.156 (a) (2017).

3. The RO's February 2011 decision denying the Veteran's claim of entitlement to service connection for COPD is final. 38 U.S.C. § 7105 (2012); 38 C.F.R. § 20.1103 (2017).

4. The criteria for reopening the claim of entitlement to service connection for COPD have been met. 38 U.S.C § 5108 (2012); 38 C.F.R. § 3.156 (a) (2017).

5. The criteria for service connection for BHL are not met. 38 U.S.C. §§ 1131, 5103(a), 5103A, 5107(b) (2012); 38 C.F.R. §§ 3.159, 3.303, 3.307, 3.309, 3.385 (2017).

6. The criteria to establish service connection for COPD have not been met. 38 U.S.C.A. §§ 1131, 5107 (2012); 38 C.F.R. §§ 3.303, 3.307 3.309 (2017).





REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

In this decision, the Board reopens the claims for service connection for BHL and COPD and grants service connection for right ear hearing loss. In view of the Board's favorable decisions, a discussion of VA's duties to notify and assist in regards to those claims is unnecessary. 38 U.S.C. §§ 5103, 5103A (2012); 38 C.F.R. § 3.159 (2017); Mayfield v. Nicholson, 19 Vet. App. 103, (2005), rev'd on other grounds, Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

As to the claim for service connection for BHL and COPD, neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist, to include the adequacy of a VA examination. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board...to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument). 

Finally, as will be discussed in detail below, the Veteran underwent VA audiological testing in February 2014. The results from this examination were deemed unreliable by the examiner and were therefore not provided. As a rationale, the examiner essentially indicated that the results obtained varied too significantly from competent contemporaneous clinical evidence to be considered valid. 

That said, the Board will not provide the Veteran with an additional VA examination. First, the findings of the examiner are suggestive that the Veteran failed to cooperate with VA examination. In this regard, the Board notes that the Court has held that "[t]he duty to assist is not always a one-way street. If a Veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the putative evidence." See Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). The Veteran must be prepared to meet his obligations by cooperating with VA efforts to provide an adequate medical examination. See Olson v. Principi, 3 Vet. App. 480 (1992). 

Second, the examination and opinion provided are still a sufficient basis upon which to decide the claim for service connection. As will be explained, the reason for denying the Veteran's claim is not predicated on a lack of diagnosis, but rather on the record lacking a nexus. In light of the aforementioned, VA has done everything reasonably possible to notify and to assist the Veteran and no further action is necessary to meet the requirements of the VCAA.

Reopening Laws, Regulations, and Merits

Generally, a claim that has been denied in an unappealed RO decision or an unappealed Board decision may not thereafter be reopened and allowed. 38 U.S.C. § 7104 (b), 7105(c). The exception is that if new and material evidence is presented or secured with respect to a claim which has been disallowed, VA shall reopen the claim and review the former disposition of the claim. 38 U.S.C. § 5108.

New evidence means evidence not previously submitted to agency decision-makers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a).

The regulation does not require new and material evidence as to each previously unproven element of a claim and creates a low threshold for reopening claims. 38 C.F.R. § 3.156(a); Shade v. Shinseki, 24 Vet. App. 110 (2010). For the purpose of determining whether new and material evidence has been submitted, the credibility of new evidence, although not its weight, is presumed. Justus v. Principi, 3 Vet. App. 510 (1992).

For clarity, the Board notes that the original denials of the Veteran's claims for service connection were completed by the Denver, Colorado and Sioux Falls, South Dakota, ROs. These previous adjudicatory actions all now fall under the jurisdiction of the Salt Lake City, Utah RO. 

That said, in February 2010, the Denver, Colorado RO denied entitlement to service connection for BHL. This denial was partially predicated upon the record lacking evidence of a current disability correlated to service. Review of the claims file reflects that notice of this initial denial was returned as undeliverable to the RO. See March 2010 Returned Mail Correspondence. Subsequent to the RO receiving notification of the undelivered documents, the Veteran while filing for unrelated claims informed the RO of his new mailing address and requested a copy of his complete claims file. See September 2010 Report of General Information VA Form 21-0820 and November 2010 Correspondence. 

Thereafter, in April 2011, the Veteran received a complete copy of his claims file, which included his February 2010 denial of service connection for BHL. See VA Correspondence. He did not file a notice of disagreement within one year of receipt of his records. The decision is thereby final as to the evidence then of record, and is not subject to revision on the same factual basis. 38 U.S.C. § 7105(b); 38 C.F.R. § 3.104, 20.302, 20.1103.

In February 2011, the Sioux Falls, South Dakota RO denied entitlement to service connection for COPD in-part as the record lacked evidence of a nexus. The Veteran did not appeal this denial. The decision is thereby final as to the evidence then of record, and is not subject to revision on the same factual basis. 38 U.S.C. § 7105(b); 38 C.F.R. § 3.104, 20.302, 20.1103.

Since these denials, the record now contains evidence that the Veteran suffers from continued worsening BHL, suggestive that he would meet the requirements necessary for hearing loss for VA purposes. See April 2013 and September 2014 VAMC Audiology Records. Additionally, with regard to COPD the Veteran has submitted treatise information which appears to suggest a correlation between hazardous chemical exposure and developing lung impairments. Finally, the record includes the Veteran's presumed credible testimony further clarifying the onset of his on-going disabilities. This collective evidence is sufficient to satisfy the low threshold requirements for new and material evidence; and the claims are reopened. 38 C.F.R. § 3.156(a); Shade v. Shinseki, 24 Vet. App. 110 (2010).

Service Connection Laws and Regulations

Under the relevant laws and regulations, service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1131. Generally, the evidence must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004); Caluza v. Brown, 7 Vet. App. 498, 505 (1995).

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third Shedden/Caluza element is through a demonstration of continuity of symptomatology if the disability claimed qualifies as a chronic disease listed in 38 C.F.R. § 3.309(a). BHL is a qualifying chronic disease, however, COPD is not. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). As a result, service connection via the demonstration of continuity of symptomatology is inapplicable only for the BHL claim.

Regulations also provide that service connection may be granted for a disability diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability is due to disease or injury which was incurred in or aggravated by service. 38 C.F.R. § 3.303(d).

The threshold for normal hearing is from 0 to 20 decibels, and higher threshold levels indicate some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155, 157 (1993). 

Impaired hearing is considered a disability for VA purposes when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels (dB) or greater, where the auditory thresholds for at least three of these frequencies are 26 dB or greater, or when the Maryland CNC speech recognition scores are less than 94 percent. 38 C.F.R. § 3.385.

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

Merits

The Veteran asserts that his currently diagnosed bilateral sensorineural hearing loss is the result of in-service noise exposure. In relevant part, he testified to having daily in-service noise exposure while working on the flight line as an aviation mechanic.

Turning to the record, on July 2009 VA audiology evaluation, an audiologist diagnosed bilateral sensorineural hearing loss. The accompanying audiological report establishes that the Veteran had a right ear speech recognition score of 92 percent. Therefore, a current disability of right ear hearing loss is established. 38 C.F.R. § 3.385. Further, although the record is currently ambiguous regarding left ear audiometric findings sufficient for hearing loss for VA purposes, the Board will in arguendo concede current disability. As will be discussed below, the current claim is being denied for lack of nexus.

With regard to in-service injury, service treatment records are silent for findings or complaints of hearing loss. Further, audiometric testing conducted during service does not reveal a significant threshold shift of 20 decibels or greater. See September 1976 Enlistment Report of Medical Examination, December 1977, July 1978, and October 1979 Audiometric (Air Conduction) Examination Chart, and July 1981 Discharge Report of Medical Examination. Nevertheless, in-service noise exposure will be conceded as personnel records confirm that the Veteran's military occupational specialty (MOS) was aviation mechanic. As such, the Board finds the Veteran's reports of exposure to noise from aircrafts consistent with the circumstances of his service. Moreover, the Veteran is competent to testify as to his in-service noise exposure. See 38 C.F.R. § 3.159(a)(2); Washington v. Nicholson, 19 Vet. App. 362, 368 (2005); Layno v. Brown, 6 Vet. App. 465, 469-70 (1994).

What remains for determination is whether the record contains a nexus, or link, between the Veteran's current hearing loss and conceded noise exposure during military service. To that end, the Veteran was afforded a VA examination in February 2014. Initially, the Board notes that following examination, the examiner opined that the Veteran's audiological scores were invalid. As rationale, the examiner cited to a substantial shift from audiological testing results obtained 10 months prior. In this regard, the examiner explained that such shifts were not impossible; however, in the instant case such results were improbable as test results showed inconsistencies when thresholds were obtained via ascending vs. descending techniques. Further, the speech reception thresholds (SRT) did not make a good match to the three frequency puretone average and were also poorer than puretone averages taken 10 months prior.

Following review of the record, the examiner found it less likely than not that the Veteran's current hearing loss was the result of his service. The examiner essentially cited to the lack of evidence of clinically impaired hearing during service, including a lack of significant threshold shifts. In rendering this determination, the examiner noted consideration of the Veteran's reported in-service noise exposure "from working on aircraft engines with the use of hearing protection as required" as well as his reports of hearing loss first manifesting in 1989, years following service separation. Finally, the examiner noted the Veteran's reports of post-service activities associated with noise exposure including working in manufacturing wherein he wore hearing protection and riding motorcycles without "rated hearing protection."

Lastly, the examiner concluded by addressing the potential for delayed onset hearing loss as the issue was raised by the Veteran's report of first experiencing hearing loss eight years after service separation. In that regard, the examiner indicated that current clinical literature simply did not support the validity of delayed onset hearing loss. The Board finds this opinion to be the most probative evidence of record as it was well rationalized against the medical, lay, and literary evidence of record. There is also no competent medical opinion to the contrary.

In sum, the competent clinical evidence does not support a correlation between the Veteran's current disability and service. To the extent that the Veteran has alleged a continuity of bilateral hearing loss since military service, the Board finds that such statements are inconsistent with the other contemporaneous evidence of record. To that end, the Veteran has provided conflicting information regarding the onset of his condition. Specifically, on application for service connection in November 2013, he reported onset of his condition as in-service. However, thereafter, on VA examination and Board hearing he reported his hearing loss began years after service separation. 

In addition, the Veteran's reported level of post-service noise exposure is contradicted by the record. In brief, on Board hearing he reported not experiencing hazardous noise exposure post-service with regard to recreational activities. However, clinical records reflect that the Veteran rode motorcycles post-service, including at least one instance of riding without noise protection from even a helmet. See April 2005 Cabell Huntington Hospital Records. Further, although he characterized his work post-service as minimal with regards to noise exposure, on application for Social Security Administration (SSA) benefits he, by way of an authorized third party, reported working with sheet metal and welding. See June 2013 SSA Function Report-Adult- Third Party, Page 2. Finally, he reported working in quality control for a manufacturing company wherein he used machines, tools, and equipment while inspecting assembly lines. See June 2013 SSA Work History Report, Pages 1-8. 

In light of this conflicting evidence, the Board does not find the Veteran credible to report continuity of symptomatology or his post service noise exposure. Correspondingly, the clinical record itself does not support hearing loss since service separation. Rather, the earliest clinical evidence of record noting hearing loss is dated in July 2009, more than 20 years post service. See Denver VAMC Treatment Medical Records. Consequently, presumptive service connection, to include on the basis of continuity of symptomatology, for BHL is not warranted. 38 U.S.C. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309; Walker, supra.

The Board acknowledges that the Veteran has contended that his BHL is the result service, and that his representative has generally alleged on his behalf that his disability is the result of his service. Lay witnesses are competent to provide testimony or statements relating to symptoms or facts of events that the lay witness observed and is within the realm of his or her personal knowledge, but not competent to establish that which would require specialized knowledge or training, such as medical expertise. Layno v. Brown, 6 Vet. App. 465, 469-70 (1994). Lay evidence may also be competent to establish medical etiology or nexus. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). However, "VA must consider lay evidence but may give it whatever weight it concludes the evidence is entitled to" and a mere conclusory generalized lay statement that service event or illness caused the claimant's current condition is insufficient to require the Secretary to provide an examination. Waters v. Shinseki, 601 F.3d 1274, 1278 (2010).

In the instant case, the Board finds that the question regarding the potential relationship between the Veteran's BHL and any instance of his service to be complex in nature. Woehlaert v. Nicholson, 21 Vet. App. 456 (2007). Specifically, while the Veteran is competent to describe his current hearing loss and his representative is competent to describe their observations of the Veteran's symptoms, the Board accords their statements regarding the etiology of such a disorder little probative value as they are not competent to opine on such a complex medical question. 

Specifically, where the determinative issue is one of medical causation, only those with specialized medical knowledge, training, or experience are competent to provide evidence on the issue. See Jones v. Brown, 7 Vet. App. 134, 137 (1994). In this regard, the question of causation involves a medical subject concerning an internal physical process extending beyond an immediately observable cause-and-effect relationship, and requires the administration and interpretation of diagnostic testing. In the instant case, there is no suggestion that the Veteran or his representative have had any medical training. As such, the question of etiology in this case may not be competently addressed by lay evidence, and the opinions of the Veteran and/or his representative are non-probative evidence. 

In reaching this decision, the Board has considered the applicability of the benefit of the doubt doctrine. However, the preponderance of the evidence is against the Veteran's claim of entitlement to service connection for BHL. As such, that doctrine is not applicable in the instant claims, and his claim must be denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert, supra.

COPD

The Veteran contends that his COPD is the result of exposure to trichloroethylene and methyl ethyl ketone while working as an aviation mechanic in-service. See Board Hearing Testimony. 

Turning to the record, September 2014 VA respiratory conditions examination confirms diagnosis of COPD. With regard to service, treatment records are negative for diagnosis or treatment for COPD, but are positive for treatment for an upper respiratory infection and viral syndrome in July and August 1977. However, on July 1981 discharge examination the Veteran was negative for diagnosed disability and his chest x-ray was deemed normal. 

To the extent the Veteran asserts exposure to trichloroethylene and methyl ethyl ketone while cleaning aircrafts in-service, as stated his MOS has been confirmed as aviation mechanic. Nevertheless, confirmation of specific exposure to trichloroethylene and methyl ethyl ketone has not been established.

That said, the collective evidence of record does not support entitlement to service connection as the claims file lacks a competent nexus between service and the Veteran's currently diagnosed COPD. With regard to positive evidence of nexus, the Veteran has submitted two medical treatises which discuss the effects of trichloroethylene and methyl ethyl ketone in relation to pulmonary disabilities. See Department of Health Services Hazard Evaluation System and Information Service Report; see also EPA Technology Transfer Network-Air Toxics Web Site Report Submitted in January 2014. 

Preliminarily, the Board notes that these submitted pieces of evidence do not directly correlate trichloroethylene and methyl ethyl ketone to the development of COPD. Of note, with specific regard to the Department of Health Services article, it only indicates a correlation between trichloroethylene and the development of a pulmonary edema; a condition which was not noted in-service. There was also no specific finding regarding the long-term effects of trichloroethylene exposure. Similarly, the EPA article essentially reflects uncertainty as to the long-term effects of methyl ethyl ketone exposure.

That said, acknowledgment is given to the fact that medical treatise evidence can, in some circumstances constitute competent medical evidence. Wallin v. West, 11 Vet. App. 509, 514 (1998), see also 38 C.F.R. § 3.159 (a)(1)(competent medical evidence may include statements contained in authoritative writings such as medical and scientific articles and research reports and analyses). Nevertheless, the Court has held that medical evidence that is speculative, general, or inconclusive in nature cannot support a claim. See Beausoleil v. Brown, 8 Vet. App. 459, 463 (1996), Libertine v. Brown, 9 Vet. App. 521, 523 (1996). Here, crucially the treatise evidence which has been submitted by the Veteran, as stated, are general in nature and do not specifically relate to the facts and circumstances surrounding the Veteran's particular case. These excerpts are not the equivalent of a statement from a medical expert who actually reviewed the Veteran's medical history and rendered a definitive opinion based on the specifics of the Veteran's history. Therefore, this evidence is of no probative value in determining whether a medical nexus relationship exists between the Veteran's COPD and his active duty service.

Comparatively, also of record is a September 2014 VA respiratory conditions examination. Following comprehensive review of the clinical, lay, and examination evidence the examiner opined that the Veteran's COPD was unrelated to service. As rationale, the examiner first explained that clinical literary review established that "epidemiologic studies indicate that cigarette smoking is overwhelmingly the most important risk factor for COPD." In the instant case, the Veteran reported beginning smoking at the age of fifteen and continuing for forty years thereafter. The examiner rationalized that given the Veteran's extensive and significant history of smoking prior to, in, and since service, this was more likely the cause than any potential less extensive exposure to hazardous chemicals. The Board finds this opinion highly probative as it was predicated on thorough review of the clinical record, in-person examination, and detailed literary study. There is also no competent clinical opinion to the contrary. 

In sum, the competent clinical evidence does not support a correlation between the Veteran's current disability and service. Acknowledgment is given to the Veteran's COPD having been associated with tobacco use. In this regard, for claims filed after June 9, 1998, the law prohibits service connection of a death or disability on the basis that it resulted from an injury or disease attributable to the use of tobacco products by a Veteran during active service. 38 U.S.C. § 1103; C.F.R. § 3.300.

Consideration has been given to the Veteran's contentions that his disability is related to his service and chemical exposure therein. Although laypersons, such as the Veteran, are sometimes competent to provide opinions on certain medical questions, the specific issues in this case falls outside the realm of common knowledge of a lay person as it involves making definitive clinical diagnoses based on knowledge of respiratory medicine. See Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011). While the Veteran is certainly competent to report that he experiences symptoms of difficulty breathing he is not competent to link those complaints to a particular etiology. His assertions are therefore not competent evidence of a medical nexus. 

Accordingly, the Board finds that the claim of entitlement to service connection for COPD must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claims of entitlement to service connection, that doctrine is not applicable. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; see also Ortiz v. Principi, 274 F.3d 1361, 1365 (Fed. Cir. 2001).


ORDER

New and material evidence having been submitted, the Veteran's request to reopen the claim for entitlement to service connection for BHL is granted. The appeal is granted to this extent only.

New and material evidence having been submitted, the Veteran's request to reopen the claim for entitlement to service connection for COPD is granted. The appeal is granted to this extent only.

Entitlement to service connection for BHL is denied.

Entitlement to service connection for COPD is denied.




____________________________________________
K. OSBORNE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs